Argued and submitted October 31, 1990, affirmed September 25, reconsideration denied November 6, petition for review denied November 26, 1991 (312 Or 526)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL DEAN WIDERSTROM,
*Appellant.*

## (C88-10-37108; CA A61948)

818 P2d 934

Steven V. Humber, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

Joseph, C. J., dissenting.

---

* Joseph, C. J., *vice* Newman, J., retired.

**DEITS, J.**

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns error to the denial of his motion to suppress. We affirm.

On March 5, 1988, defendant arrived at the Portland airport to take a flight to Spokane. At the airport, he passed through a security checkpoint on his way to his gate. The scanner detected an opaque metal container, large enough to hold explosives or a weapon, in his carry-on bag, and the security person asked him to open the container. When defendant complied, the security person saw that it contained white powder, a razor blade and what appeared to be marijuana. She allowed defendant to pass through the gate but reported her observations to Officer Sorenson of the Port of Portland Police. Sorenson asked State Trooper George of the Portland Airport Interagency Narcotics Team to assist in the investigation. While defendant sat in the gate waiting area, three uniformed officers observed him from a distance until George arrived.

George, who was not in uniform, approached defendant at the gate and identified himself as a police officer by showing his badge. During that conversation, the three uniformed officers were 15 to 18 feet from defendant. George told defendant that his job was "intercepting narcotics going out of and into the Portland area through the airport" and that he had received a call that defendant "may be in possession of some controlled substances." George gave defendant the option of completing the investigation at the gate or in the police office. Defendant agreed to accompany George to his office, and the uniformed officers followed at a distance.

As George and defendant were walking toward George's office, George noticed that defendant was holding a metal canister. He asked him if the canister was "the article or contained the articles that I was looking for." Defendant replied that it was. George asked him if he could have it, and defendant gave it to him. Defendant, George and the uniformed officers entered the elevator together. When they reached the office, the uniformed officers waited in the hallway outside while George and defendant entered. They were alone in the room, which had only one door. In the office,

George asked defendant for identification and opened the canister in his presence. Defendant did not tell George not to open it. In the canister, George found baggies with white powder residue, a baggie containing white powder, a marijuana bud and a razor blade. In George's experience, those items were consistent with methamphetamine packaging and use. After that, George gave defendant *Miranda* warnings, issued him a uniform criminal citation to appear in district court and allowed him to leave.

Defendant moved to suppress all evidence obtained by George at the airport, because it "was the product of an illegal stop, search and seizure of defendant * * *." The trial court denied the motion.[1] Defendant assigns error to that denial, arguing that he was in custody from the time that George first contacted him at the gate, that George should have given him *Miranda* warnings before he asked him any questions and that the evidence obtained in violation of *Miranda* rights should be suppressed. He also argues that defendant's consent to the seizure of the metal canister was involuntary, because it was the result of the illegal interrogation and was coerced.[2]

We first address whether defendant should have been advised of his rights when George first asked him about the canister. Under the Oregon Constitution,[3] warnings are required when a defendant is in "full custody" or when circumstances exist which, although they do not rise to the level of full custody, create a setting that is "compelling." *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990). Defendant points to the presence of the three uniformed police officers and George and argues that he was in custody or, at least, in compelling circumstances at the time of the inquiry. We disagree. Although defendant may not have felt free to leave,

---

[1] The court stated that it would suppress statements made by defendant to George during the encounter in the police office, because defendant should, at that point, have been advised of his rights against self-incrimination. The state then agreed that those statements would not be offered as evidence at trial.

[2] Defendant does not argue that, once George had possession of the canister, he could not open it.

[3] Article I, section 12, provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

that does not necessarily mean that he was in custody or compelling circumstances. In discussing whether a defendant was in custody in *State v. Greason,* 106 Or App 529, 809 P2d 695, *rev den* 311 Or 643 (1991), we said:

"Although defendant may have felt that he was not free to leave, that alone is not dispositive. For example, during a 'stop,' which is 'a temporary restraint of a person's liberty by a peace officer lawfully present in any place,' ORS 131.605(5), a reasonable person would believe that he is 'not free to leave.' Nonetheless, a valid stop may be followed by an officer's reasonable inquiry, ORS 131.615(1), and generally that inquiry need not be preceded by warnings." *See also State v. Brown,* 100 Or App 204, 785 P2d 790, *rev den* 309 Or 698 (1990). (Citation omitted.)

George had been advised by the airport security personnel, who had limited training in drug investigation, that defendant had a white powder, razor blades and "what appeared to be marijuana" in the canister. Acting on a reasonable suspicion that defendant was in possession of narcotics, he conducted a lawful stop, pursuant to ORS 131.615. He was not in uniform, and his demeanor was casual and polite. The uniformed officers stayed 15 to 18 feet away. George told defendant that he wanted to investigate the matter, either at the gate or, at defendant's choosing, at his office. Defendant indicated that he would prefer to have the investigation take place in George's office. George told defendant that he would try to complete the investigation in time for defendant to make his flight. As the trial court found, there was nothing coercive in what had occurred at that time:

"When Officer George arrived he identified himself as a police officer by showing a badge. He indicated his — what had been phoned to him, and he said that — he told the defendant that it would probably be less embarrassing to him if they talked about this in his office rather than in the presence of all these people, some thirty to forty people, waiting for the plane. I think this was an act of courtesy to the defendant. And the defendant agreed. There was no coercion at that point. I think the defendant probably went for the simple reason that he did not want to be embarrassed in front of all those people."

George and defendant then proceeded down the public corridor with the security officers following them at a

distance. At that point, George had no further information about defendant's alleged possession of contraband than he had received from the airport police. The state conceded at trial that, although George had a reasonable suspicion that defendant possessed contraband, he did not have probable cause to arrest him. George's question about the canister was a reasonable inquiry following a lawful stop. There was no greater coercion than if George had continued questioning defendant at the gate. George merely walked alongside defendant down the corridor where many other people were present, and the airport police officers followed at a distance. We agree with the trial court's conclusion that, when George asked about the canister in the corridor, defendant was not in custody or compelling circumstances and that *Miranda* warnings were not required at that time.

Defendant also argues that his federal constitutional rights were violated when George spoke to him at the gate and during their walk to the elevator without advising him of his *Miranda* rights. Because defendant was not in custody for federal constitutional purposes at that time, we reach the same result under the Fifth Amendment that we do under Article I, section 12. *Berkemer v. McCarty,* 468 US 420, 441, 104 S Ct 3138, 82 L Ed 2d 317 (1984); *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977). (1977).

■    Next, we consider whether defendant's relinquishment of the canister was voluntary. Under both the Fourth Amendment and Article I, section 9, the inquiry is whether the totality of the facts and circumstances establish that defendant's consent was the product of his free will rather than the result of coercion, express or implied. *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973); *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981).

■    The evidence supports the trial court's conclusion that defendant's consent was voluntary. Although defendant apparently knew that the security personnel had seen narcotics in his luggage and he anticipated that he would be contacted by the police, he did not leave the airport or dispose of the contraband. He was contacted by one policeman, who asked to discuss the matter with him. There were other security personnel in the immediate area of whom defendant was likely aware, but they remained at least 15 to 18 feet away

from the encounter between George and defendant. When given the option of discussing the matter in the gate area or in George's office, defendant chose the office. He willingly went down the airport's public corridor with George toward his office. When George asked about the canister, it was the first substantive question that he had asked, and there were no threats or other coercive statements of any kind. We conclude that defendant's surrender of the canister was not coerced. The trial court properly denied the motion to suppress.

Affirmed.

**JOSEPH, C. J.,** dissenting.

The majority says that, as George and defendant were walking toward George's office, George noticed that defendant was holding a metal canister. George asked him if the canister was "the article or contained the articles that I was looking for." Defendant replied that it was.

There should be no doubt that George's question to defendant constituted interrogation. It was "reasonably likely to solicit [*sic*] an incriminating response from the subject." *State v. Barmon,* 67 Or App 369, 377, 679 P2d 888 (*quoting State v. Fitzgerald,* 60 Or App 466, 471, 653 P2d 1289 (1982)); *rev den* 297 Or 227 (1984). *See also Rhode Island v. Innis,* 446 US 291, 301, 100 S Ct 1682, 64 L Ed 2d 297 (1980). Contrary to the majority's conclusion, there should also be no doubt that, when George asked defendant that question, defendant was in a "compelling setting." *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990); *State v. Magee,* 304 Or 261, 265, 744 P2d 250 (1987); *see also State v. Carlson,* 311 Or 201, 808 P2d 1002 (1991). Defendant was walking to a police office in the company of 4 police officers; 3 were in uniform and the fourth was a narcotics investigator. Defendant knew that the police had information about drugs in his canister. Under Article I, section 9, George should have given defendant *Miranda*-type warnings before asking him about the canister.

Moreover, George's improper interrogation of defendant deprived him of any meaningful choice with respect to George's subsequent request that defendant give him the canister. At that time, in violation of Article I, section 12, George had already obtained defendant's admission, in effect,

that the canister contained contraband. George thereby exploited his illegal conduct to gain possession of the canister and then exploited that conduct by searching the canister in the police office. The majority weakly asserts that defendant did not tell George not to open it. The state did not carry its burden of proving, by a preponderance of the evidence, that defendant's consent to the search of the canister was voluntary. *State v. Kennedy,* 290 Or 493, 501, 624 P2d 99 (1981); *State v. Stevens,* 311 Or 119, 137, 806 P2d 92 (1991).

I dissent.