Argued and submitted September 27, 1991, reversed and remanded April 22, reconsideration denied June 17, petition for review denied July 21, 1992 (313 Or 627)

### STATE OF OREGON,
*Appellant,*

*v.*

### BRYAN NEAL KEMP,
*Respondent.*

(90CR0238FE; CA A65542 (Control))

### STATE OF OREGON,
*Appellant,*

*v.*

### JOHN DAVID HAWORTH,
*Respondent.*

(90CR0243FE; CA A65724)
(Cases Consolidated)

831 P2d 37

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

David K. Allen, Deputy Public Defender, Salem, argued the cause for respondents. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

Defendants[1] were arrested for possession of a controlled substance, methamphetamine. ORS 475.992(4). They moved to suppress evidence of the crime, arguing that the discovery and seizure of the methamphetamine resulted from an illegal search and seizure. The trial court granted the motion, and the state appeals. We reverse and remand.

At approximately 8 p.m. on October 20, 1989, Oregon State Police Trooper Markee was driving on an I-5 on-ramp in Douglas County, when he saw a compact car travelling parallel to him on I-5. Markee noticed that the dome light was on in the car and that the front passenger "was holding something in his hand and it appeared to be a — an oblong type mirror," but Markee "couldn't observe what he was doing with it." Markee followed the car for a short distance and saw it swerve into the left lane. He turned on his overhead lights, the car's dome light went out, and it pulled over to the shoulder. Although it was dark, Markee could see the three occupants of the car in the headlights of his own vehicle. He saw them looking for him on the driver's side and saw the front passenger furtively reaching under the seat with one or both hands. Markee approached the car on the passenger side. He shined his flashlight through the windows, saw the front passenger with his hands still under the seat and then saw a rifle barrel on the floor next to the passenger door about 12 inches from the front passenger's hand. Markee opened the door, seized the weapon and told the occupants to get out of the car. He then searched the front passenger area of the car for more weapons. In the course of that search, he found a mirror with some powdery substance on it, which he believed to be contraband. He then found a small, opaque bottle. He opened the bottle, saw what he thought was methamphetamine, and arrested all three occupants for possession of a controlled substance.

■ Defendants argued that the evidence should be suppressed because ORS 810.410(3)(b)[2] limits an officer's

---

[1] Defendants are the driver and the rear seat passenger. The third occupant, the front passenger, is not before us.

[2] ORS 810.410(3)(b) provides:

"(3) A police officer:

"* * * * *

authority to investigate a traffic infraction to matters reasonably related to the reason for the stop and requires that "the officer's investigation * * * must represent the most minimal intrusion on the stopped party's liberty." According to defendants, approaching on the passenger side of a vehicle is not a reasonable means of investigating a traffic infraction and unnecessarily prolongs the encounter "*unless* it can be independently justified as a reasonable precaution for officer safety."

The trial court agreed with defendants and ruled that, because Markee failed to articulate or demonstrate "a reasonable belief that the [passenger] posed an imminent threat" to his safety, he could not rely on officer safety to justify his approach along the right side of the car. The trial court also ruled that, because Markee did not have probable cause to believe that the passenger was committing a crime when he approached the car, he could not justify his actions on that basis either. The trial court then held that Markee's approach on the right side of the car was unauthorized and that the evidence must be suppressed.

■ The state argues that Markee's approach on the right side was justified as a reasonable precaution to ensure his safety. We need not determine that issue, because we hold that an officer who has lawfully stopped a vehicle may approach it from either side and need not justify that action in terms of officer safety or any other reason. Such an approach does not place the officer where he has no right to be, nor does it intrude on a protected privacy interest.

> "An officer who has lawfully stopped a vehicle does not violate any occupant's rights in walking around the vehicle and looking through the windows of the vehicle to observe that which can be plainly seen." *State v. Jackson*, 296 Or 430, 438, 677 P2d 21 (1984).

Relying on *State v. Jackson, supra*, and *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991), defendants argue that Markee's passenger side approach was "based on an excuse to begin searching for contraband" in violation of ORS

---

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of a citation."

810.410(3)(b). In *Jackson*, the officer walked around a lawfully stopped van after he had completed his investigation of a traffic infraction and issued a citation. With his flashlight, he saw open beer cans in the van, which gave him reason to believe the occupants were in violation of the open container law. He entered the van to investigate and discovered evidence of drug-related activity in plain view. In upholding the officer's observation of the beer cans and entry into the van, the Supreme Court said:

> "We hold that the officer's actions in this case were not illegally intrusive. *They were not based on an excuse to begin searching or investigating for contraband or other crime evidence unrelated to the traffic reason for the stop* and, therefore, did not violate Article I, Section 9, of the Oregon Constitution." 296 Or at 438. (Emphasis supplied.)

In *Porter*, the officer lawfully stopped the defendant after learning that there was a warrant for his arrest. During the stop, the officer noticed an open beer can behind the driver's seat. After arresting the defendant and placing him in the patrol car, the officer returned to the car and picked up the beer can and found that it still contained beer. While searching the vehicle for more open beer cans, he discovered methamphetamine and paraphernalia associated with its use. The Supreme Court held that, because a violation of the open container law is only a traffic infraction, the officer was not entitled to search for more evidence of that offense when he already had sufficient evidence to issue a citation. The court said:

> "ORS 810.410(3) defines the authority of the police to respond to a traffic infraction; by implication, *the statute proscribes any further action by the police, including a search, unless it has some basis other than the traffic infraction*. A search that explores for evidence of other crimes or infractions is not 'reasonably related to the traffic infraction, identification and issuance of citation.'" 312 Or at 120. (Emphasis supplied.)

Defendants rely on the emphasized language from both cases. Neither case, however, limits an officer's right to be in a place where the officer otherwise has a right to be. Neither case even impliedly limits an officer to a driver's side approach to a lawfully stopped vehicle. Neither case prohibits plain view observations or the use of evidence gathered as a

result of such observations. *Jackson, Porter* and ORS 810.410(3)(b) limit the scope of an officer's authority to investigate a traffic infraction, but they do not prohibit an officer from acting on a plain view observation from a legal vantage point. The passenger side of a lawfully stopped vehicle is as lawful a vantage point as is the driver's side, and a lawful vantage point is not made unlawful by the officer's motive for making an observation from it. As the Supreme Court said in *State v. Ainsworth*, 310 Or 613, 622, 801 P2d 749 (1990):

> "[A] police officer's unaided observation, purposive or not, from a lawful vantage point is not a search under Article I, section 9, of the Oregon Constitution."

The trial court erred in suppressing the evidence because of Markee's passenger side approach.

 Defendants argue that, even if the trial court's reason for its ruling was wrong, it was nevertheless correct, because the searches and seizures that followed Markee's approach to their car were illegal. Because the trial court indicated how it would rule on that point,[3] and because the issues will be raised on remand, we address the legality of each step in Markee's investigation after he approached the car, beginning with his seizure of the weapon.

> "Article I, section 9, of the Oregon Constitution does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987).

Markee testified, and the trial court found, that almost immediately after reaching the passenger side door and *before* opening it, Markee saw the rifle next to the passenger's seat.[4] Markee testified that the rifle, combined with the front passenger's continued furtive movements only a foot away from

---

[3] At the hearing, the trial court said that it would uphold all of Markee's actions if it found that his initial approach to the car was legal.

[4] Because Markee was in a place where he had a right to be when he saw the rifle, his observation of that weapon was not a "search" under Article I, section 9, of the Oregon Constitution. *State v. Ainsworth*, 310 Or 613, 801 P2d 749 (1990).

the rifle, caused him to be concerned for his safety because he suspected that the front passenger "may have a weapon under the seat."[5] We hold that, under those facts, Markee's suspicion was reasonable and that his seizure of the rifle and limited search of the front passenger area for other weapons were "reasonable steps" for his own protection.

■ Because Markee's concern for his own safety justified his limited search of the front passenger area for other weapons, he was in a place where he had a right to be when he found the mirror with the powdery substance on it. That discovery, therefore, was not the result of an illegal search. If Markee's lawful discovery of the mirror[6] gave him probable cause to arrest defendants for possession of a controlled substance, he was then justified in seizing and opening the closed, opaque bottle as part of a search incident to arrest.

■■ An officer must have an arrest warrant or probable cause to arrest to justify a search incident to arrest. The suspect need not actually be under arrest at the time of the search. *State v. Owens*, 302 Or 196, 203, 729 P2d 524 (1986). The search is limited to evidence of the crime for which the defendant was or could be arrested and which

"could reasonably be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest." 302 Or at 201.

If those requirements are met, "no 'container rule' blocks the intensity of the search." 302 Or at 202.

■■ Whether the opening of the bottle was lawful turns on a determination of whether Markee had probable cause to arrest defendants for possession of a controlled substance

---

[5] In making its ruling, the trial court said:

"I guess [Markee] opened the door and got people out and seized the rifle * * *."

Defendants, relying on that statement, argue that Markee ordered all three occupants out of the vehicle and that,

"once the officer had evacuated the car no one would have access to guns remaining in it. * * * The officer's safety was insured when he ordered the occupants out of the car."

The legality of Markee's conduct does not turn on whether there was anyone left in the car. Rather, the test is whether his conduct was reasonable under all of the circumstances. *State v. Miller*, 45 Or App 407, 608 P2d 595, *rev den* 289 Or 275 (1980).

[6] The mirror was not seized and is not in evidence.

before he opened the bottle. Determination of probable cause is a question of law. *State v. Herbert*, 302 Or 237, 241, 729 P2d 547 (1986). Under the Oregon Constitution,

> "[a]n officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances. The test is * * * what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and expertise." 302 Or at 204.

Markee testified that, based on his training and experience, the powdery substance on the mirror caused him to believe that defendants were in possession of a controlled substance. His subjective belief was "objectively reasonable in the circumstances" known to him at the time and gave him probable cause to arrest defendants for possession of a controlled substance *before* he opened the bottle. Because he had probable cause to arrest defendants, he had the authority to search incident to arrest and was justified in seizing and opening the opaque pill bottle as part of that search. He found the pill bottle next to the mirror and reasonably believed that it contained more evidence that defendants were in possession of controlled substances.[7] The evidence should not have been suppressed.

Reversed and remanded.

.

---

[7] Officer Markee testified:

"Because the — the mirror is used to facilitate ingestion of drugs and had white powder substance on it which was — which had the characteristics of methamphetamine, its color and substance, and the bottle was directly next to the mirror and which is circumstances that announced its contents to me to be methamphetamine."

The circumstances in which a closed, opaque container is found may support a finding that it "announces its contents." *See, e.g., State v. Smith*, 97 Or App 114, 775 P2d 335, *rev den* 308 Or 315 (1989); *State v. Massey*, 90 Or App 95, 750 P2d 1192 (1988). However, we need not rule on whether the circumstances of this case support such a determination because we hold that Markee was justified in opening the container as part of his search incident to arrest.