Argued and submitted May 10, 1993, affirmed February 9, 1994

# STATE OF OREGON,
*Respondent,*

*v.*

# DANIEL RAY NEVEL,
*Appellant.*

(C91-09-34444; CA A74105)

868 P2d 1338

Zack M. Lorts argued the cause for appellant. With him on the brief was J. Kevin Hunt.

Ann F. Kelley, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

Leeson, J., dissenting.

## ROSSMAN, P. J.

Defendant appeals his convictions for possession, manufacture and delivery of a controlled substance. ORS 475.992(1)(a), (4)(b). He assigns error to the trial court's denial of his motion to suppress statements obtained after he was stopped and evidence was seized from his person and vehicle. He also claims that the court erred in denying his motion for judgments of acquittal on the manufacture and delivery charges. We affirm.

At approximately midnight, Officer Larson was dispatched to the scene of an automobile accident in Portland. The report of the accident said that a woman was yelling "something to the effect that he [is] stabbing me." Larson arrived at the scene within a minute of receiving the call and pulled up behind defendant's van. Larson recognized defendant from previous encounters, one of which had involved an arrest of another individual at defendant's residence on drug charges. Defendant approached Larson as he was getting out of the patrol car. Larson saw defendant's wife in a car that had driven off the road and into a fence. He asked defendant what had happened and defendant told him that he and his wife were "having a fight." Larson knew from previous conversations with defendant's wife that defendant had physically assaulted her in the past.

Larson asked defendant to sit in the back of his patrol car. Defendant complied. Larson walked over to defendant's wife, who was still in the car, and asked her what had occurred. She said that she and defendant were in an argument and that he had forced her car off the road with his van. Larson then went back to the patrol car and let defendant out. Defendant had spent approximately three minutes in the patrol car.

As defendant emerged from the patrol car, Larson noticed that his face was red and that he was perspiring profusely, although he was wearing only a thin shirt. Larson himself was dressed in two shirts and a "heavy, hot" bullet-proof vest, but he was not perspiring at all. He also noticed that defendant's "whole mannerism was elevated." Larson testified that an elevated body temperature and

mild hyperactivity are classic signs of methamphetamine intoxication. He also said that, in his experience, drugs and/or alcohol are "almost always present" in domestic disputes. On the basis of his observations of defendant and on his training and experience in the detection of intoxicated persons, Larson concluded that defendant was under the influence of methamphetamine.[1]

Larson next asked defendant "how the dope business was." Defendant replied that he "was getting out of the drug business." Larson then asked defendant if he had any methamphetamine in his van. Defendant responded that there was one half of a gram in the van and volunteered to retrieve it. Larson followed defendant over to the van, where defendant opened the sliding side door, surreptitiously reached into a large athletic bag, removed a black bank bag and handed it to Larson. The trial court found that it was clear from defendant's furtive movements that he was attempting to conceal something else in the athletic bag. Inside the bank bag Larson discovered two "loaded syringes" and a bottle containing a clear crystal that defendant said was methamphetamine. Larson knew that the crystal was not a finished stage methamphetamine.

Another officer who had arrived at the scene advised defendant of his constitutional rights, after which Larson searched defendant and found a small microscope and an electronic pH meter. Larson testified that small microscopes are commonly used to test the purity of methamphetamine and that pH meters are frequently used in the final stages of methamphetamine manufacturing.

Larson then searched defendant's van. He found five large bags of a white powder which, collectively, weighed four and a half pounds. The powder was determined to be pseudoephedrine, which, according to Larson's testimony, is "used in the red phosphorous method of manufacturing methamphetamine." He also recovered a

---

[1] On cross-examination, Larson testified that a person recently involved in a fight, as defendant allegedly was, may manifest physical symptoms similar to those of a person on methamphetamine. However, Larson was confident that defendant's manifestations were not attributable to the altercation with his wife. In response to the prosecution's question whether Larson had any doubt about defendant being under the influence of methamphetamine, he replied that "it was not a close call."

gun, pH papers, and $11,000 in cash from the van. Defendant was formally placed under arrest.

■     In his first assignment of error, defendant challenges the denial of his motion to suppress his statement that he had one half of a gram of methamphetamine in his van, and any incriminating evidence subsequently obtained which derived from that statement. He first contends that he was illegally "stopped" under ORS 131.615(1) and Article I, section 9, of the Oregon Constitution,[2] when he was placed in the back of the patrol car. The state concedes that defendant was stopped at that time, but argues that the stop was lawful, because Larson had a reasonable suspicion that defendant had assaulted his wife.

ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

The phrase "reasonably suspects" is defined at ORS 131.605(4):

" 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 and 131.625."

We conclude that the dispatch report, defendant's statement that he and his wife were fighting and Larson's knowledge of defendant's previous assaults on his wife provided a reasonable basis to suspect that defendant had assaulted his wife. The stop was therefore lawful under both the statute and Article I, section 9. *See State v. Holmes*, 311 Or 400, 412, 813 P2d 28 (1991).

■     Defendant next argues that, although he may have been lawfully stopped, Larson exceeded the permissible scope of inquiry under ORS 131.615(3) by asking him about

---

[2] Article I, section 9, of the Oregon Constitution provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

Defendant has presented no separate argument under the Fourth Amendment to the United States Constitution.

the possible presence of methamphetamine in his van. Questioning during a stop authorized by ORS 131.615(1) is permissible "only if limited to the immediate circumstances that aroused the officer's suspicion." ORS 131.615(3). The inquiry about the possible presence of methamphetamine in the van was not reasonably limited to the circumstances that *originally* aroused Larson's suspicion. However, during the course of the lawful stop, Larson developed an independent suspicion of other criminal activity. After speaking with defendant and his wife, Larson learned that they were involved in an argument and that defendant had allegedly forced his wife's car off the road while driving his van. Additionally, Larson observed defendant exhibit physical symptoms consistent with those of a person under the influence of methamphetamine. He also knew from experience that drugs often are involved in domestic disputes. Those facts supported Larson's reasonable suspicion that defendant had committed the crime of driving under the influence of intoxicants. Larson's inquiry of defendant concerning the possibility of methamphetamine in his van was not unrelated to that offense and thus was within the permissible scope of questioning under ORS 131.615(3).

■ ■ Defendant next contends that *Miranda* warnings were required under Article I, section 12, of the Oregon Constitution, and the Fifth Amendment, before questioning him. We address the state constitutional claim first. *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983).

*Miranda*-like warnings are required under the Oregon Constitution when a defendant is in full custody or "when circumstances exist which, although they do not rise to the level of full custody, create a setting that is 'compelling.' " *State v. Widerstrom*, 109 Or App 18, 21, 818 P2d 934 (1991). Defendant points to the presence of five other uniformed officers, three other patrol cars[3] and the fact that he was placed in Larson's patrol car and argues that he was in custody or, at least, in compelling circumstances, at the time of the inquiry, because a reasonable person in that

---

[3] Larson, his partner and one other officer were present during the entire encounter. It is unclear from the record exactly when the other three officers arrived.

situation would not feel free to leave. However, that defendant reasonably may not have believed he could leave does not necessarily mean that he was in full custody or that the circumstances were so compelling as to trigger the *Miranda* requirement. As we said in *State v. Greason*, 106 Or App 529, 533, 809 P2d 695, *rev den* 311 Or 643 (1991):

"Although defendant may have felt that he was not free to leave, that alone is not dispositive. For example, during a 'stop,' [under ORS 131.615], a reasonable person would believe that he is 'not free to leave.' Nonetheless, a valid stop may be followed by an officer's reasonable inquiry, ORS 131.615(1), *and generally that inquiry need not be preceded by warnings*." (Emphasis supplied; citations omitted.)

*See also State v. Widerstrom, supra*, 109 Or App at 22.

As explained above, Larson was acting on a reasonable suspicion that defendant had assaulted his wife when he asked defendant to sit in the patrol car while he attempted to ascertain exactly what had transpired. Because episodes of violence between intimates are highly volatile and dangerous for both the investigating officers and the parties involved, it was reasonable for Larson to ask defendant to sit in the patrol car in order to defuse the situation and limit the officers' and parties' exposure to further danger. The trial court ruled:

"This seems to me much more consistent with a stop, temporary detention of liberty [rather than compelling circumstances.] [Larson] never told [defendant], even when he put him in the patrol car, he was under arrest, let alone when he took him out. He never cuffed him, just said he wanted to talk to him a little bit longer. And had been talking to him for less than probably seven minutes at the time he asked the questions that gave rise to the first incriminating statement."

We conclude that the investigatory detention of defendant was as unobtrusive as possible. Although three patrol cars were present, none had on flashing lights, a siren or a spotlight. Defendant was never told that he was under arrest, nor was he handcuffed or frisked. No physical force was employed by any of the officers at any time during the questioning, which lasted only seven minutes. Moreover, Larson's demeanor was casual and polite. He

described the conversation during which he asked defendant about the "dope business" as non-confrontational and "pretty mellow." In short, there is no evidence that the interrogation was prolonged or that it took place in an atmosphere with coercive overtones. Accordingly, we conclude that Larson did not violate Article I, section 12, by neglecting to give defendant *Miranda*-like warnings before questioning him. We also conclude that defendant was not in custody for purposes of the federal constitution. *See Berkemer v. McCarty*, 468 US 420, 441, 104 S Ct 3138, 82 L Ed 2d 317 (1984). We therefore reach the same result under the Fifth Amendment.[4]

Defendant next argues that the items seized from his person and his van should have been suppressed, because the warrantless searches that led to their discovery were unconstitutional under Article I, section 9, of the Oregon Constitution. We first examine the legality of the search of defendant's person.

The state contends that that search was valid as incident to his arrest. It is well settled that police may conduct a warrantless search, if that search is reasonable in time, space and intensity incident to a person's arrest. *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982); *State v. Giffen*, 98 Or App 332, 334, 778 P2d 1001 (1989). A search incident to arrest retains its character as such even if it precedes the arrest, so long as the search is not too remote in time or space from the site of the arrest. *State v. Warner*, 117 Or App 420, 424, 844 P2d 272 (1992); *State v. Kemp/Haworth*, 112 Or App 522, 528, 831 P2d 37, *rev den* 313 Or 627 (1992). The record amply demonstrates that Larson had

---

[4] We are aware that ORS 133.055(2)(c) directs an officer to arrest a person who the officer has probable cause to believe has either assaulted his or her spouse or placed the spouse in fear of imminent serious physical injury. Here, however, the record discloses that defendant had not been placed under arrest at the time of questioning. As discussed in the text, Larson was acting on a reasonable suspicion, not probable cause, that defendant had assaulted his wife when he placed defendant in the patrol car. Defendant does not contend that Larson's suspicions had risen to the level of probable cause when the questioning began. Even assuming, *arguendo*, that probable cause did exist, it is clear from the record that Larson had not, *in fact*, placed defendant under arrest at the time of the interrogation, notwithstanding the statutory directive in ORS 133.055(2)(a). Defendant cannot rely on ORS 133.055(2)(a) as conclusively establishing that he was under arrest at the time of questioning when it is evident from the record that he was not.

probable cause to arrest defendant for possession of methamphetamine at the time of the search. Although defendant had not been formally arrested when he was searched, he was placed under arrest shortly thereafter at the scene of the accident. The search and arrest were sufficiently close in time and space to uphold the search as incident to defendant's arrest. *See State v. Warner, supra,* 117 Or App at 424.

■■ We next consider the constitutionality of the van search. The state argues that that search was valid under the automobile exception to the warrant requirement. In *State v. Brown,* 301 Or 268, 276, 721 P2d 1357 (1986), the Supreme Court held that police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains contraband or crime evidence and the vehicle was mobile when stopped. Defendant argues only that Larson lacked probable cause to believe that the van contained seizable items. The test is "whether a magistrate could issue a constitutionally sound warrant based on the probable cause articulated by the officers." 301 Or at 276. Larson's observations of defendant's physical condition, the "loaded" syringes, the unfinished methamphetamine and the surreptitious manner in which defendant retrieved the methamphetamine furnished Larson with probable cause to believe that more drugs would be found in the van.

Because the automobile exception justifies the warrantless search of the van, we need not decide whether defendant voluntarily consented to the search.

Defendant also assigns error to the trial court's denial of his motion for judgments of acquittal on the charges of manufacture and delivery of a controlled substance. He argues that there was insufficient evidence to convict him of those crimes. The evidence was sufficient.[5]

Affirmed.

---

[5] Defendant argues that we should disregard the portions of Larson's testimony that related to the process by which methamphetamine is manufactured, because Larson was unqualified to render an opinion on that subject. However, defendant does not assign as error the court's ruling that the testimony was admissible. Accordingly, we do not consider the propriety of that ruling, *see* ORAP 5.45(2), (4), (5), and treat the evidence as properly admitted.

**LEESON, J.,** dissenting.

I would hold that defendant's confession was unlawfully obtained, and that the trial court erred by failing to suppress it and the fruits of that illegality. Accordingly, I dissent.

Larson testified that he arrived at the scene, briefly spoke with defendant, and then asked him to get into the patrol car. There were no handles on the inside of the doors, and the windows were closed and barred. At least three, and perhaps six, uniformed officers were present. Defendant was left alone in the patrol car while Larson interviewed defendant's wife, who confirmed that she and defendant were having a fight, and that defendant had run her car off the road with his van. After that conversation, which lasted "less than five minutes," Larson "let [defendant] out" of the patrol car. Larson noticed that defendant was sweating a lot, and was "elevated." He suspected that defendant was on drugs. Larson indicated that he wanted "to talk to [defendant] further."

Larson then asked defendant about "the dope business," and, specifically, about whether defendant was carrying any methamphetamine at that time. Defendant confessed that he was.

Prior to interrogation in compelling circumstances, police are required to provide *Miranda*-like warnings. *State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990). Larson's questioning of defendant was "interrogation," because it was reasonably likely to elicit an incriminating response. That interrogation followed several minutes of confinement in the back of a police patrol car during an investigation, after which defendant was given no indication that he was free to go. It seems clear to me that those circumstances were "compelling."

Although the circumstances of the interrogation were compelling, the police failed to provide defendant with the required warnings. Therefore, defendant's confession should have been suppressed. The state makes no argument that the physical evidence that was acquired on the heels of defendant's confession is admissible, notwithstanding the prior illegality in obtaining the confession.

Therefore, I would hold that the physical evidence also should have been suppressed.

I respectfully dissent.