Argued and submitted November 15, 1993, reversed and remanded January 18, petition for review denied April 18, 1995 (321 Or 47)

STATE OF OREGON,
*Appellant,*

*v.*

SUSAN JOY SOEN,
*Respondent.*

(DA 480615-9211, DA 482770-9212;
CA A78723 (Control), A78724)
(Cases Consolidated)

888 P2d 583

Thomas A. Balmer, Deputy Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Emily Simon argued the cause for respondent. With her on the brief was George Williams.

Before Richardson, Chief Judge,* and Deits, Presiding Judge, and Riggs, Judge.

DEITS, P. J.

---

\* Richardson, C. J., *vice* Durham, J.

**DEITS, P. J.**

The state appeals from a pretrial order suppressing certain statements made by defendant. Defendant was charged by information with three counts of initiating a false police report. ORS 162.375. The issue in this case is whether defendant was in "compelling" circumstances such that *Miranda*-like warnings were necessary when she made statements to the police. We reverse and remand.

In May, 1992, Portland police began investigating reports by defendant and her roommate, Azalea Cooley, that they had been the victims of alleged bias crimes, including several cross-burnings at defendant's house. Detectives Zahler and Jolly both had been involved in investigating these reports. Zahler had visited defendant's house 10 to 15 times and, in an attempt to catch the perpetrator, had stayed overnight at the house on at least four occasions. Defendant was on a first name basis with Zahler and regarded her as a friend.

The detectives had set up video cameras around defendant's house to attempt to record further incidents. On the morning of November 1, 1992, Zahler and Jolly viewed a videotape of a cross-burning that occurred earlier that morning on the deck of defendant's house. The videotape appeared to show a figure repeatedly going from the inside of the house out onto the deck and showed a fire being lit on the deck. After viewing the tape, Zahler believed that the figure on the tape was defendant, because the only other resident of the house, Cooley, used a wheelchair.

Later that same morning, defendant reported the cross-burning to Zahler. Zahler told defendant that she would be over later in the afternoon to discuss the problems at the house. Zahler obtained a search warrant for defendant's residence, and she and Jolly went to defendant's house that afternoon. Accompanying them to assist in the search were five other police and fire officers. Initially, only Zahler and Jolly went to the door of the house. The other officers remained outside. Defendant admitted Zahler and Jolly into the house. Zahler first spoke privately with Cooley and told her that she suspected that defendant was setting the fires.

Zahler then spoke to defendant and told her that she suspected her of the cross-burning that had taken place earlier that morning. Zahler told her that it was only "logical" to assume that defendant was involved in the crimes because the only other resident of the house could not walk. Zahler also told defendant that she believed the person on the videotape was a blonde.[1] Zahler asked defendant more than once if she had been involved in the previous incidents.

In response to Zahler's comments and questions, defendant at first denied participating in the cross-burning. She then said that if she had set the fire, she had no recollection of having done it, and it would have been "a part of her that she could not remember." Zahler then asked defendant if she could look around the house. She also asked defendant if there were any weapons present in the house, and defendant gave Zahler two guns for "safekeeping." Defendant and Cooley were both asked for consent to search the house. Both consented orally and in writing to the search. After they had given consent, Jolly produced and read to them a search warrant. He then contacted the five officers who were waiting outside and told them to begin the search.

During the search, which lasted two to three hours, defendant, Cooley and Jolly sat around the dining room table. Most of the time, the three were silent. Jolly was acting as the evidence custodian, marking items as they were seized by the other officers. At one point, the officers found and brought to Jolly burned portions of sheets that they had found in the garage. Defendant volunteered that those sheets were from a previous cross-burning at the house. Also during that time, a friend of defendant's, Rood, came to the house. Jolly went to the door and told Rood that defendant did not want to see her. When the search was completed, Zahler cited defendant for initiating a false police report.

After she was cited, defendant asked to speak privately with Zahler. At the suppression hearing, Zahler testified as to their conversation after that request:

---

[1] Zahler apparently told defendant several times that she believed the person on the videotape was blonde. However, upon later viewing of the tape, Zahler admitted, and the trial court found, that it was impossible to tell the hair color of the person on the videotape.

"Q. What did [defendant] say to you?

"A. [Defendant] stated that she suspected that Azalea Cooley had been doing these things to herself and that these types of incidents had happened at their residence before when Ms. Cooley was involved with the Women of Color organization.

"Q. Did she indicate what the incidents were during —while Ms. Cooley was involved with Women of Color?

"A. She stated that Ms. Cooley had been receiving threatening phone calls after she had exchanged numbers with the Women of Color group.

"Q. Did you then say anything to the defendant?

"A. Yes, I advised her that I didn't believe Azalea Cooley could have performed the physical running up and down of the stairs at [defendant's residence], as Ms. Cooley was confined to a wheelchair.

"Q. What was—did defendant respond?

"A. Yes, she did.

"Q. What was her response?

"A. She stated that Ms. Cooley could in fact walk and that she could even go up and down the stairs as Ms. Cooley had been responsible for doing the laundry just the week before."

Defendant also told Zahler that she "had been wanting to break off the relationship with Ms. Cooley and had subsequently been seeing a therapist to work through some of the problems that she was having disentangling herself from Ms. Cooley." After this conversation, all of the officers left the house.

Before trial, defendant filed a motion to suppress all of the statements that she made to the police at her house on the basis that the statements were made in a police dominated atmosphere and that, because they were made without the benefit of *Miranda*-like warnings, they must be suppressed under Article I, section 12, of the Oregon Constitution.[2] Defendant argued below that she felt she was not free to leave and that, consequently, that she was in custody for

_____

[2] Article I, section 12, of the Oregon Constitution, provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

*Miranda* purposes. The district court concluded that, while the situation was not sufficiently restrictive so as to amount to custody, "Z[ahler]'s police work at the house, coupled with J[olly]'s interaction with [Cooley] and [defendant]," created a "compelling" atmosphere that required *Miranda*-like warnings. The court granted the motion to suppress.

■ On appeal, defendant does not argue that she was in "full custody" when she made the statements. Rather, she contends that, at the time that she spoke with the police, she was in "compelling circumstances." Under the Oregon Constitution, *Miranda*-like warnings "may be required in circumstances that, although they do not rise to the level of full custody, create a setting which judges would and officers should recognize to be 'compelling.'" *State v. Smith*, 310 Or 1, 7, 791 P2d 250 (1990); *State v. Zelinka*, 130 Or App 464, 473, 882 P2d 624 (1994). Defendant was not given *Miranda*-like warnings before she made the disputed statements to the police. Accordingly, the critical question here is whether defendant was in "compelling circumstances" when she made the statements to the police.

Defendant points to a number of factors that she believes makes the circumstances here compelling. First, she strongly relies on the fact that when Zahler came to her house, Zahler considered defendant the main suspect in the alleged crimes. Defendant argues that Zahler's failure to immediately convey to defendant that she was a suspect was deceptive and that it was Zahler's duty to let defendant know that their relationship had changed, that "rather than coming to assist [defendant], she was coming to accuse [defendant]." Defendant argues that because the police officers' purpose in coming to the house was to question her as a suspect, their failure to be forthcoming with this information was deceptive and, thus, made the atmosphere compelling.

■ Oregon courts, however, have held that the fact that officers question a person as a suspect in a crime "does not inherently create a 'compelling' setting for Oregon constitutional purposes." *State v. Carlson*, 311 Or 201, 205, 808 P2d 1002 (1991) (quoting *State v. Smith, supra*, 310 Or at 11); *see also State v. Tobias*, 131 Or App 591, 887 P2d 366 (1994).[3] In

---

[3] In *State v. Tobias, supra*, we held that the circumstances were not compelling.

*Smith, supra,* for example, the defendant was questioned several times about the death of his wife. By the time of the final interview, which took place in an alcohol treatment center where he was temporarily living, the defendant was the primary suspect in his wife's murder. In *State v. Zelinka, supra,* we discussed the court's conclusion in *Smith:*

> "The court held [in *Smith*] that the circumstances of the questioning were not compelling because the defendant was questioned in 'surroundings relatively familiar' to him and the defendant 'of his own free will, agreed to meet the detective.' The court further held that the fact that the defendant was the primary suspect was 'legally insignificant.' " *State v. Zelinka, supra,* 130 Or App at 474 (quoting *State v. Smith, supra,* 310 Or at 7). (Citations omitted.)

■　　In *State v. Zelinka, supra,* the defendant was questioned in the death of his young daughter. At the police station, the defendant initially denied kicking his daughter, and invoked his right to counsel. Two hours later, an officer knocked on the open door of the defendant's motel room and confronted the defendant with information regarding his daughter's death. Defendant admitted at that time that he had kicked his daughter. He later moved to suppress those admissions because he had not been given *Miranda*-like warnings at the motel before speaking with the detective. 130 Or App at 472. Following the rationale of *Smith,* we concluded that the record demonstrated that the questioning occurred in the familiar setting of the defendant's motel room, the defendant had invited the officers into the room, and the officers "in no way coerced, compelled, or pressured defendant to answer." 130 Or App at 474. We held that the circumstances were not compelling, despite the fact that the officers suspected the defendant was involved in his daughter's death. Similarly, we conclude here that the fact that Zahler suspected that defendant was involved in the alleged crimes did not, in itself, make the circumstances compelling.

■　　We also do not agree with defendant's assertion that Zahler was deceptive regarding the change in her relationship

---

In that case the police, who had no other suspects, questioned the defendant after two children identified him as being the perpetrator of sexual abuse. In response to the questions, the defendant made incriminating statements. We held that the officer was not required to give *Miranda*-like warnings, reasoning that the defendant was questioned on a public street and the tone of the inquiry was not coercive.

with defendant and that this contributed to the compelling circumstances. The district court did not make such a finding, and the record does not support such a finding. The record shows that soon after she arrived at defendant's house on November 1, Zahler told defendant that she believed that defendant was involved in the alleged crimes.

■ Defendant also argues that Zahler's statement, that she was coming to the house to discuss the incidents, was dishonest because Zahler had a search warrant and that this also contributed to the compelling circumstances. Again, we do not agree. The fact that the officers had a search warrant does not mean that defendant could not voluntarily admit the officers to her house; nor does it mean that defendant could not voluntarily consent to a search of her home. The officers' possession of a search warrant did not make the circumstances compelling.

■ Another factor defendant points to in support of her argument that the circumstances were compelling was that the house was "police-dominated" and that she did not feel free to leave. Again, however, the district court did not make a finding that defendant did not feel free to leave, and the record does not support it. Although there is no direct evidence that defendant did not feel free to leave, defendant contends that this must be inferred from the circumstances. Defendant did ask to go to the bathroom, and she asked for permission to go sit in the living room. However, there is no indication in the record that she was told that she had to ask. Further, both Zahler and Jolly testified that defendant was free to leave. The record does not support the inference that defendant would have us draw.

■ Even assuming that defendant did not feel free to leave, that does not necessarily mean that there were compelling circumstances. In *State v. Nevel*, 126 Or App 270, 868 P2d 1338 (1994), the defendant was stopped and questioned regarding the possession of controlled substances. The defendant

> "point[ed] to the presence of five other uniformed officers, three other patrol cars and the fact that he was placed in [a] patrol car and argu[ed] that he was in custody, or, at least, in compelling circumstances, at the time of the inquiry, because

a reasonable person in that situation would not feel free to leave." 126 Or App at 275.

The defendant was never told he was under arrest, nor was he handcuffed. We held in that case that just because the defendant did not feel free to leave "does not necessarily mean that he was in full custody or that the circumstances were so compelling as to trigger the *Miranda* requirement." 126 Or App at 275-76.

After considering the totality of the circumstances, we conclude that defendant's statements here were not made in compelling circumstances. This encounter took place in a setting familiar to defendant, her own home. She had an ongoing relationship with the officers, and, on this occasion, she had called the officers to her home to discuss the alleged crimes that were taking place. She was in law enforcement herself, and had become friends with Zahler. None of the officers were in uniform. Defendant was told upon the officers' arrival that no one would be arrested or taken into custody. Defendant was never arrested or physically restrained. As mentioned above, Zahler and Jolly both testified that defendant was free to leave the house

■ There is no indication in the record that defendant was coerced or pressured into making the statements that she did. We conclude that the circumstances of this case do not rise to the level of compelling circumstances requiring *Miranda*-like warnings under Article I, section 12, of the Oregon Constitution. Accordingly, the district court erred in granting defendant's motion to suppress.

Reversed and remanded.