Argued and submitted October 26, 2009, conviction for possession of a controlled substance reversed and remanded; otherwise affirmed January 27, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RYAN LEE SCHWERBEL,
*Defendant-Appellant.*

Deschutes County Circuit Court
06FE1911MA; A138080

226 P3d 100

Ryan T. O'Connor, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Rosenblum, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

ROSENBLUM, P. J.

## ROSENBLUM, P. J.

Defendant appeals a judgment of conviction for driving while suspended and possession of a controlled substance. Defendant assigns error to the trial court's denial of his motion to suppress, arguing that the arresting officer elicited an incriminating statement from defendant while he was being interrogated under compelling circumstances without informing defendant of his *Miranda* rights. For the reasons that follow, we conclude that the trial court erred in denying defendant's motion to suppress. Accordingly, we reverse and remand.

We take the following relevant facts from the record of the suppression hearing. On December 2, 2006, Deputy Crawford of the Deschutes County Sheriff's Office observed defendant driving a car with a cracked windshield. Crawford initiated a traffic stop for the violation of driving an unsafe vehicle. Crawford obtained defendant's identification card and discovered that defendant's license was suspended.[1] Crawford ordered defendant to exit the car, and defendant did so. Crawford told defendant that "[defendant] was going to be detained, as it was a crime for [defendant] to drive." Crawford asked defendant "if there was anything on [defendant's] person or in [defendant's] vehicle that [Crawford] needed to be aware of." Defendant responded that he had a pipe in his pocket.

Crawford believed that defendant was referring to a pipe used to smoke a controlled substance, and he conducted a patdown search of defendant to locate the pipe. Crawford did not feel a pipe, but did feel a small zippered bag that could be used to hold a pipe in one of defendant's pockets. He removed the zippered bag, which was closed. Crawford then handcuffed defendant. Crawford asked defendant if there was a "crank pipe" in the zippered bag. Defendant answered in the affirmative.

---

[1] At the suppression hearing, Crawford testified that he had decided to impound defendant's car, but had not yet decided whether to take defendant into custody for the crime of driving while suspended or to cite and release defendant. Crawford also testified that he did not have any particular safety concerns with defendant at any point in their encounter and that defendant was cooperative throughout.

Crawford asked for defendant's consent to open the zippered bag. Defendant consented. Crawford opened the bag, which contained methamphetamine and a pipe. Defendant was cited for driving while suspended and possession of a controlled substance and then released.

Before trial, defendant filed a motion to suppress the physical evidence discovered by Crawford and the incriminating statements made by defendant. Defendant argued that Crawford's questioning occurred under compelling circumstances without defendant being advised of his *Miranda* rights. The state responded by arguing that Crawford's search was a lawful search incident to arrest and that Crawford had not interrogated defendant because his question about whether defendant possessed "anything" that Crawford "needed to be aware of" was merely a question attendant to arrest and custody. The trial court concluded that the search was a valid search incident to arrest for officer safety purposes and that Crawford's question to defendant was a reasonable inquiry to ensure Crawford's safety. The trial court denied the motion to suppress. Defendant then entered a conditional plea of guilty to both charges.

On appeal, defendant, among other arguments, renews his contention that the statement that he made—that he had a pipe in his pocket—and all subsequently derived oral and physical evidence should be suppressed as obtained in violation of his right to be free from compelled self-incrimination under the Oregon and federal constitutions. In response to that argument, the state contends that the circumstances were not sufficiently compelling to require *Miranda* warnings. The state further argues, in the alternative, that any constitutional violation does not require reversal because the disputed evidence was not used at trial, an argument that the state concedes is foreclosed by our decision in *State v. Vondehn*, 219 Or App 492, 507-08, 184 P3d 567, *rev allowed*, 345 Or 460 (2008).[2]

We review the trial court's denial of a motion to suppress for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d

---

[2] The state does not argue on appeal that the search was a valid search incident to a lawful arrest for officer safety purposes.

421 (1993). Article I, section 12, of the Oregon Constitution requires that a suspect be informed of the rights commonly referred to as *Miranda* warnings when police interrogation of a suspect occurs under "compelling" circumstances or when that suspect is in "full custody." *State v. Shaff*, 343 Or 639, 645, 175 P3d 454 (2007).

A suspect is in "full custody" when he or she has been formally arrested or "placed under restraint by police acting in their official capacity." *State v. Warner*, 181 Or App 622, 628, 47 P3d 497, *rev den*, 335 Or 42 (2002); *see also State v. Magee*, 304 Or 261, 266, 744 P2d 250 (1987) ("When this defendant was told by an officer investigating assault charges that he could not leave the police station because he was involved in the fight, this constituted 'custody' adequate to require a warning before questioning."). A suspect is placed in "compelling circumstances" when a "reasonable person in the suspect's position would have felt compelled to answer a police officer's questions." *State v. Bush*, 203 Or App 605, 610, 126 P3d 705 (2006). Defendant does not contend that he was in "full custody."

Factors that we consider in determining whether the circumstances under which a suspect was questioned were compelling include (1) the location of the encounter, (2) the length of the encounter, (3) the amount of pressure exerted on the defendant, and (4) the defendant's ability to terminate the encounter. *Shaff*, 343 Or at 645. We also consider "the number of officers and police cars at the scene," "the use of physical force or confinement during questioning," and "the demeanor of the investigating officer." *State v. McMillan*, 184 Or App 63, 68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003).

Officer questioning during an "investigatory detention" or routine traffic stop ordinarily does not create compelling circumstances that would require *Miranda* warnings. *State v. Nevel*, 126 Or App 270, 276, 868 P2d 1338 (1994). "Although an officer's unarticulated suspicions do not result in compelling circumstances, expressly confronting a suspect with evidence of probable cause to arrest may make the circumstances sufficiently compelling to require *Miranda* warnings[.]" *McMillan*, 184 Or App at 68 (citations omitted). In

*Shaff*, the Supreme Court stated that, with respect to confronting a suspect with evidence of probable cause to arrest, "what matters is not whether evidence of guilt was apparent to the suspect; rather, it is whether the officers used that evidence in a coercive manner." 343 Or at 650. Ultimately, our "overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006).

■    A limited exception to the general prohibition on police questioning in custodial or compelling circumstances without *Miranda* warnings exists for police questions that are not reasonably likely to result in an incriminating response. *State v. Moeller*, 229 Or App 306, 311, 211 P3d 364 (2009) ("Among the questions normally attendant to arrest and custody—not requiring *Miranda* warnings—are 'routine booking questions.' "); *see also State v. Cunningham*, 179 Or App 498, 505, 40 P3d 535 (2002) (concluding that an officer's question about weapons prior to a patdown search was motivated by safety concerns and therefore did not require *Miranda* warnings).

■ ■ When an officer obtains evidence in violation of a defendant's right to be free from self-incrimination under Article I, section 12, we suppress the derivative oral and physical evidence in order to return the defendant to the position he or she would have been in had the violation not occurred. *Vondehn*, 219 Or App at 507-08. The "exploitation" analysis established by the Supreme Court in *State v. Hall*, 339 Or 7, 115 P3d 908 (2005) applies in this context. *Vondehn*, 219 Or App at 507. Under *Hall*, the defendant must first establish "a minimal factual nexus" between the unlawful police conduct and discovery of the evidence that the defendant seeks to suppress. 339 Or at 34-35. If the defendant does so, the burden then shifts to the state to prove that the disputed evidence was obtained in a manner that was only tenuously related to the unlawful police conduct. *Id.* at 35.

■    In this case, we conclude that the circumstances became compelling for the purposes of our Article I, section 12, analysis at the moment that Crawford told defendant

that he "was going to be detained, as it was a crime for [defendant] to drive." In reaching that conclusion, we first examine the various aspects of the encounter that tend to make the circumstances more or less compelling, separately, before considering the circumstances as a whole, taking particular note of the four factors identified by the Supreme Court in *Shaff*.

We begin by considering the location and length of the encounter, the first and second factors identified in *Shaff*. Those factors provide support for the state's argument that the *Miranda* warnings were not required before Crawford interrogated defendant. The encounter occurred in a motel parking lot near a public highway. *See State v. Prickett*, 324 Or 489, 495-96, 930 P2d 221 (1997) (concluding that the circumstances were not compelling after noting, among other factors, that defendant was stopped on a public highway). With respect to the length of the encounter, Crawford testified that his entire interaction with defendant took less than 15 minutes. *Cf. Shaff*, 343 Or at 650-51 (concluding that circumstances were not compelling in 10-minute encounter); *Roble-Baker*, 340 Or at 638 (concluding that circumstances were compelling where officers questioned the defendant for more than five hours). Other factors that tend to make the circumstances less compelling are that Crawford was the only officer at the scene, that he did not use physical force, that his demeanor was polite and nonconfrontational, and that he did not use a loud tone of voice or repeated questioning in the encounter.

We reach the opposite conclusion with respect to the third and fourth *Shaff* factors. As noted, the fourth factor identified in *Shaff* is the defendant's ability to terminate the encounter. Here, Crawford's statement unambiguously informed defendant that he was not free to leave because he had committed a crime. Moreover, Crawford had recently ordered defendant to exit his car, further demonstrating his control over defendant's movement.

As it relates to the third factor identified in *Shaff*, the amount of pressure exerted on the defendant, Crawford's statement exerted a significant amount of pressure on defendant to answer his questions because it notified defendant

that Crawford knew that it was a crime for defendant to drive, that Crawford had gathered enough evidence to arrest defendant for the crime of driving while suspended, and that Crawford intended to detain—and could arrest—defendant for that crime. Immediately after making that statement, Crawford asked defendant whether he had anything on him or in the vehicle that Crawford needed to know about. A reasonable person in defendant's position—knowing that he was being detained by Crawford for committing a crime and that it was within Crawford's discretion to arrest him and take him to jail or to cite and release him—would feel compelled to cooperate with Crawford by answering his question. *See, e.g.*, *McMillan*, 184 Or App at 68-69 ("Taken together, those facts created a compelling situation because [the] defendant reasonably understood from what [an officer] had told him that the officers could exert control over his means of communication and movement, that they had probable cause to arrest him, and that [a different officer] would be deciding whether [the] defendant should be arrested and taken to jail."). Other factors that increased the pressure on defendant were that Crawford had recently stopped defendant in a marked police car with lights and that Crawford was an armed and uniformed sheriff's deputy.

We distinguish this case from the "investigatory detention" that we described in *Nevel* because, unlike in *Nevel* where the investigation of the defendant was ongoing, in this case, Crawford's investigation into whether defendant had committed the crime of driving while suspended was complete. Similarly, in *Shaff*, the officers never indicated to the defendant—who was not free to leave—that he was going to be detained or arrested for any crime and the disputed questioning occurred during the investigatory phase of the detention. Considering the totality of the circumstances, we conclude that Crawford's statement to defendant that he was being detained for the crime of driving while suspended created the "police-dominated atmosphere that *Miranda* warnings were intended to counteract." *Roble-Baker*, 340 Or at 641. Crawford informed defendant that he was not free to leave because he had committed a crime. While defendant was not formally in custody, because the circumstances

under which Crawford questioned defendant were compelling, any interrogation of defendant under those circumstances without first informing him of his *Miranda* rights violated his right to be free from compelled self-incrimination.

■ We also readily conclude that Crawford's question to defendant about possessing "anything" that Crawford "needed to be aware of" was a question that was reasonably likely to elicit an incriminating response. Crawford's question was not a narrowly tailored booking or officer-safety question. Moreover, the state in its answering brief acknowledges that Crawford's question was a question that called for an incriminating response. Thus, we conclude that Crawford's question was custodial *interrogation*, and not merely a routine booking question or a safety-motivated question before a patdown search. *See State v. Pender*, 181 Or App 559, 563, 47 P3d 63 (2002) (concluding that an officer's question under compelling circumstances, prior to a patdown search, about possessing controlled substances did not satisfy the exception to the *Miranda* warning requirement because it was reasonably likely to elicit an incriminating response, but that a question about possessing weapons or sharp objects did satisfy the exception because it was motivated by legitimate officer safety concerns). We therefore conclude that Crawford interrogated defendant under compelling circumstances without informing defendant of his *Miranda* rights.

It follows from that conclusion that defendant's response to Crawford's question, in which defendant admitted that he possessed a pipe, should be suppressed as obtained in violation of defendant's right to be free from compelled self-incrimination pursuant to Article I, section 12. Defendant's response to Crawford's question led directly to defendant's subsequent admission that the zippered bag contained a crank pipe and to the discovery and seizure of the pipe and methamphetamine in the bag. Because both defendant's incriminating statements and the physical evidence discovered by Crawford are the unattenuated products of illegal police conduct, suppression of that oral and physical evidence is required to restore defendant to the position that he

would be in without the illegal police conduct. *See, e.g.,* *Vondehn*, 219 Or App at 507-09 (suppressing the defendant's post-*Miranda*-warning incriminating statements and physical evidence obtained in a consent search as the unattenuated product of the defendant's incriminating prewarning statements). The trial court therefore erred in denying defendant's motion to suppress.[3]

Conviction for possession of a controlled substance reversed and remanded; otherwise affirmed.

---

[3] Although defendant appeals from a judgment of conviction both for driving while suspended and for possession of a controlled substance, his assignment of error pertains solely to his conviction for possession of a controlled substance. ORS 135.335 allows a defendant to conditionally plead guilty, to seek "review of an adverse determination of any specified pretrial motion[,]" and to withdraw that plea when the defendant "prevails on appeal[.]" We conclude that, with respect to defendant's guilty plea and subsequent conviction for driving while suspended, defendant did not seek review of an adverse determination related to that conviction. We therefore affirm his conviction for that crime.