Argued and submitted December 23, 2002, reversed and remanded
February 19, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# RYAN CHRISTOPHER BURDICK,
*Appellant.*

## 001186; A112775

63 P3d 1190

Jennelle Meeks Barton, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, Deits, Chief Judge, and Kistler, Judge.

KISTLER, J.

## KISTLER, J.

Based on his conditional guilty plea, defendant was convicted of possessing a controlled substance. On appeal, he argues that the trial court erred in denying his motion to suppress his statements. He reasons that the officers were required to give him *Miranda* warnings before questioning him. We reverse and remand.

We state the facts consistently with the trial court's express factual findings and, when its findings do not address an issue, consistently with its ruling denying the motion to suppress. Using a confidential reliable informant (CRI), police officers made several controlled buys of methamphetamine from Mary Booth at her home. Based on the information from those buys, the officers obtained a search warrant for Booth's home. The next day, the officers went to Booth's home to serve the warrant.

Before reaching Booth's home, the officers saw her driving her car. The officers stopped her, took her into custody, and searched both her and the car pursuant to the warrant. At that time, Booth confessed that she sold methamphetamine about once a week and that she had about ten customers. One officer drove Booth's car back to her home. At least seven officers from state, county, and local police forces, as well as an agent from the U.S. Customs Service, then executed the warrant.

Defendant and five other persons were inside Booth's home. The officers forcibly entered the house through two separate doors, ordered defendant and the other persons onto the floor at gunpoint, and placed all of them in handcuffs. The officers secured the home in approximately one minute. They took defendant and the others outside and told them to remain on the porch. The officers kept defendant in handcuffs while they searched the residence and interviewed some of the occupants. After 15 to 20 minutes, the officers removed the handcuffs but told defendant to stay on the porch.[1]

---

[1] In searching the home, the officers found four guns as well as items associated with methamphetamine use and sale. However, neither the guns nor the drug-related items were found "sitting out" in plain view and none was found in the part of the home where defendant had been located.

At some point after being released from the handcuffs, defendant told Detective Brad Kneaper that he wanted to speak to Detective Mark Blum, who was present. Defendant wanted to see if he could be released so that he could go to work. Blum met with defendant away from the porch area. Blum asked defendant whether he had any drugs on him, and defendant said that he had a pipe in his front pocket. Defendant then produced the pipe, a lighter, a straw that can be used to snort methamphetamine, one plastic bag with methamphetamine, another with methamphetamine residue, and a leather case. When asked by Blum where he bought the methamphetamine, defendant said that he bought it in Rockaway, but he would not give the detective the name of the dealer. Blum asked defendant if he wished to work as an informant, and defendant said that he did not. Blum then permitted defendant to leave.

Before trial, defendant moved to suppress the statements that he made to Blum. He claimed that, when he was placed in handcuffs, he was under arrest and should have been given *Miranda* warnings before Blum questioned him. The trial court denied defendant's motion to suppress because it held that he was neither in custody nor in a compelling setting at the time the statements were made. Defendant entered a conditional guilty plea and, on appeal, assigns error to the ruling denying his suppression motion. He argues that the trial court erred in finding that he was not in compelling circumstances when Blum interrogated him.

■ ■ If the police place a person in either full custody or compelling circumstances, they must give that person *Miranda* warnings before questioning him or her. *State v. Werowinski*, 179 Or App 522, 526, 40 P3d 545, *rev den*, 334 Or 632 (2002). When determining whether a situation was compelling, "the relevant inquiry is how a reasonable person in the [person's] position would have understood the situation," based on the totality of the circumstances. *Id.* at 529, 532 (quoting *State v. Clem*, 136 Or App 37, 42, 900 P2d 1064 (1995)) (emphasis omitted). We review the question whether defendant was in compelling circumstances for errors of law, accepting the trial court's findings of historical fact as long as there is evidence in the record to support them. *Id.* at 529; *State v. Goree*, 151 Or App 621, 637, 950 P2d 919 (1997), *rev den*, 327 Or 123 (1998).

Defendant argues that, considering the totality of the circumstances, he was in a compelling situation when Blum asked if he had any drugs on him. The state responds that the officers had handcuffed defendant for their safety, not to place him in custody. The state also argues that, because the handcuffs were only on for a short period of time and were removed before defendant spoke with Blum, the circumstances were not compelling.

We hold that Blum should have given defendant *Miranda* warnings before questioning him. *See State v. Magee,* 304 Or 261, 744 P2d 250 (1987). At least seven officers forcibly entered Booth's house, ordered defendant and the other occupants on the floor at gunpoint, handcuffed them for 15 to 20 minutes,[2] and, after removing the handcuffs, confined them on the porch while the officers continued searching the house and interviewing the occupants. Considering all the circumstances, the situation was, at a minimum, compelling. *See State v. McMillan,* 184 Or App 63, 55 P3d 537 (2002). The officers' actions created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract. *Miranda v. Arizona,* 384 US 436, 444-45, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

In arguing otherwise, the state contends that defendant was merely stopped; he was held in handcuffs only for a short time; Blum did not speak with him for a prolonged period of time; and their encounter took place when defendant was no longer handcuffed. However, in *Werowinski,* we held that the defendant had been placed in compelling circumstances after being held in the back of a patrol car for 15 minutes and then questioned by police with the car door opened but with the exit blocked. *Werowinski,* 179 Or App at 532. The state's argument regarding the brevity of the period of time defendant was handcuffed is unpersuasive, given that defendant was held in handcuffs for 15 to 20 minutes and then confined to the porch of the residence, a situation similar to that in *Werowinski.*

---

[2] Although the state asserts that defendant was handcuffed for officer safety reasons, the police secured the premises in about one minute. After the residence was secured, officer safety was no longer a reasonable justification for continuing to keep defendant in handcuffs. *See State v. Morgan,* 106 Or App 138, 142, 806 P2d 713, *rev den,* 312 Or 235 (1991).

Beyond that, the officers' use of handcuffs is only one of several factors that render the circumstances in this case compelling. As we explained in *State v. Nevel*, 126 Or App 270, 277, 868 P2d 1338 (1994), a compelling situation can exist if, given the totality of the circumstances, the interrogation took place in a coercive atmosphere. Even after the handcuffs were removed from defendant, he was confined on the porch with the other persons from the residence and was under the physical control of the police officers who, only a short time earlier, had burst into the house, ordered him onto the floor at gunpoint, and placed him in handcuffs. In addition, the same officers had confined defendant on the porch of the residence while they continued to interrogate people at the scene and search the house. The coercive atmosphere that the officers' actions created had not dissipated and, considering the totality of the circumstances, required *Miranda* warnings. Because the officers did not give defendant *Miranda* warnings before questioning him, the trial court should have granted his motion to suppress.

Reversed and remanded.