Argued and submitted October 26, 2005 at Hood River High School, Hood River, reversed and remanded January 4, 2006

# STATE OF OREGON,
*Appellant,*

*v.*

# LARRY DEAN BUSH,
*Respondent.*

04C45654; A126601

126 P3d 705

David J. Amesbury, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

J. Michael Alexander argued the cause for respondent. With him on the brief was Swanson, Lathen, Alexander & McCann, PC.

Before Landau, Presiding Judge, and Ortega, Judge, and Hull, Judge pro tempore.

HULL, J. pro tempore.

**HULL, J. pro tempore**

The state appeals from a pretrial order suppressing statements that defendant made to a police officer before defendant was arrested for driving while under the influence of intoxicants (DUII), ORS 813.010. In issuing its order, the trial court concluded that the officer's failure to provide defendant with *Miranda* warnings rendered defendant's statements inadmissible. We agree with the state that *Miranda* warnings were not required in this case because, at the time he made the statements to a police officer, defendant was not in full custody, nor were the statements made under compelling circumstances. We reverse and remand.

■ The relevant facts are not in dispute. On the night of April 29, 2004, three Keizer police officers responded to a report of a woman complaining of a man who was in front of her house and who refused to leave. The officers arrived at the woman's home in two patrol cars, their lights and sirens off. Defendant was sitting on the front porch. The officers told defendant to leave the porch and go wait in the driveway, which was approximately 20 to 30 feet away.[1] One of the officers then spoke with the woman who had called in the complaint, while another officer, Wilson, spoke with defendant.

Standing in the driveway, Wilson initially questioned defendant in an attempt to determine what was going on and why he refused to leave. Wilson and defendant stood two to three feet from one another; defendant was not free to leave the scene, but he was not physically restrained. At some point while he questioned defendant, Wilson noticed that defendant's breath smelled of alcohol and that he was swaying back and forth and struggling to maintain his balance. Wilson also noticed that defendant's car was parked across the street. Suspecting that defendant may have been

---

[1] The record is not entirely clear about the manner in which defendant was told to move to the driveway. Officer Wilson testified that he "had [defendant] come away from the door" and move down to the driveway. We state the facts here to reflect the findings of the trial court that "[t]he police told the defendant to go to the driveway and wait." In reviewing a decision on a motion to suppress, we are bound by the trial court's findings if there is evidence in the record to support them. *State v. Stephens*, 184 Or App 556, 560, 56 P3d 950 (2002), *rev den*, 335 Or 195 (2003).

driving under the influence, Wilson proceeded to ask defendant several questions related to how defendant had come to the home and whether he had been drinking. In responding to those questions, defendant stated that he had driven to the scene, that he had been drinking before he drove over, and that he had not had anything more to drink since arriving. Defendant then submitted to a field sobriety test, after which Wilson arrested him for DUII. At no time before his arrest was defendant advised of his *Miranda* rights.

Defendant moved to have the statements that he had made to Wilson suppressed, arguing that Wilson was obligated under both the state and federal constitutions to advise him of his *Miranda* rights before detaining and questioning him. In response, the state argued that the questioning was incident to a valid stop and that *Miranda* warnings were therefore not required under the circumstances. The trial court agreed with defendant and issued a pretrial order suppressing defendant's statements to the police. In the order, the trial court concluded that "[w]hen * * * a defendant was told to go to a place, wait with a police officer, and was not free to leave, that person is in custody for the purposes of *Miranda*." *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966).

On appeal, the state assigns error to the trial court's suppression of defendant's statements. The state renews its argument that, at the time defendant made those statements, the circumstances were such that Wilson was not required to advise defendant of his *Miranda* rights. We agree with the state.

Under Article I, section 12, of the Oregon Constitution, a police officer is required to deliver *Miranda* warnings when the person is in full custody or "when circumstances exist which, although they do not rise to the level of full custody, create a setting that is 'compelling.' " *State v. Widerstrom*, 109 Or App 18, 21, 818 P2d 934, *rev den*, 312 Or 526 (1991). We review the question whether a particular setting amounts to full custody or is otherwise "compelling" for errors of law, accepting the trial court's findings of historical fact as long as there is evidence in the record to support them. *State v. Burdick*, 186 Or App 460, 463, 63 P3d 1190 (2003).

■■ We begin by noting that defendant was not in "full custody" at the time he was questioned. For purposes of Article I, section 12, a person is in "full custody" when the person has been either formally arrested or placed under restraint by police acting in their official capacity. *State v. Warner*, 181 Or App 622, 628, 47 P3d 497, *rev den*, 335 Or 42 (2002). An officer who reasonably suspects that a person has committed a crime may make a "stop," that is, temporarily detain the person to make a "reasonable inquiry" related to the circumstances that aroused the officer's suspicion. ORS 131.615(1). A stop is not an arrest. *See* ORS 131.605(6) (defining a "stop"); ORS 133.005(1) (defining an "arrest" and specifically noting that a stop is not an arrest); *State v. Toevs*, 327 Or 525, 534, 964 P2d 1007 (1998) (recognizing the distinction between a stop and an arrest). The fact that an individual who is subject to a stop is not free to go does not transform a stop into an arrest, *see* ORS 131.605(6) (defining a stop as a "temporary restraint of a person's liberty"), nor does it mean that the detained person is in custody for purposes of the *Miranda* rule. Indeed, we have said repeatedly that an officer's inquiry during a routine stop ordinarily does not need to be preceded by *Miranda* warnings. *State v. Nevel*, 126 Or App 270, 276, 868 P2d 1338 (1994); *Widerstrom*, 109 Or App at 22; *State v. Greason*, 106 Or App 529, 533, 809 P2d 695, *rev den*, 311 Or 643 (1991).

In this case, the police officers' conduct was fully consistent with a routine and lawful stop. Wilson temporarily detained defendant and conducted his inquiry in the immediate vicinity of the home where the officers found defendant when they responded to the call. *See* ORS 131.615(2) (providing that "detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time"). The officers had reasonable suspicion that defendant was trespassing, and Wilson's initial questions were related to that subject. *See* ORS 131.615(3)(a) (a reasonable inquiry must be limited to the "immediate circumstances that aroused the officer's suspicion"). When he noticed that defendant appeared intoxicated, Wilson reasonably suspected that defendant may have committed the crime of DUII, and he turned his questioning to that subject. *See* ORS 131.615(3)(b) (a reasonable inquiry also includes "circumstances arising

during the course of the detention and inquiry that give rise to a reasonable suspicion"). There is no evidence in the record that Wilson detained defendant for an unreasonable amount of time, or that he used unreasonable force, or that his demeanor or approach was in any way oppressive or coercive. He did not use any restraints, such as handcuffs, nor did he confine defendant in the back of his patrol car; he simply spoke with him while standing in the driveway. At the time that defendant was questioned, therefore, he was the subject of a lawful, temporary stop; he was not in custody.

We turn to whether the questioning took place under "compelling" circumstances. *See State v. Smith*, 310 Or 1, 7, 791 P2d 836 (1990) (warning of rights under Article I, section 12, of the Oregon Constitution required when police questioning occurs in "setting which judges would and officers should recognize as 'compelling' " (internal quotation marks omitted)). To determine whether the setting in which a person was questioned by a police officer rises to the level of being "compelling" for purposes of Article I, section 12, we consider the totality of circumstances in which the questioning took place, *State v. Prickett*, 324 Or 489, 495, 930 P2d 221 (1997), and ask whether a reasonable person in the suspect's position would have felt compelled to answer a police officer's questions. *See State v. Coen*, 203 Or App 92, 125 P3d 761 (2005). The inquiry is thus highly fact specific. *See Prickett*, 324 Or at 495. A review of past cases involving the necessity of *Miranda* warnings reveals some of the wide variety of factors that are potentially relevant to the question whether compelling circumstances exist, including, for example, the number of officers present, *Nevel*, 126 Or App at 275-76; whether the suspect was physically restrained with handcuffs, *Burdick*, 186 Or App at 464, or confined in a patrol car, *State v. Werowinski*, 179 Or App 522, 529, 40 P3d 545, *rev den*, 334 Or 632 (2002); whether officers used force or displayed weapons, *Burdick*, 186 Or App at 465; the duration of the detention, *State v. Barber*, 179 Or App 674, 678, 41 P3d 455, *rev den*, 334 Or 632 (2002); the demeanor of the officers in engaging and questioning a suspect, *Nevel*, 126 Or App at 276-77; the language used by the officers, *id.*; whether sirens or flashing lights were present, *id.*; the familiarity to the suspect of the location where the questioning took place, *State v.*

*Carlson*, 311 Or 201, 205, 808 P2d 1002 (1991); and whether the suspect has been expressly confronted with incriminating evidence prior to questioning, *State v. McMillan*, 184 Or App 63, 68, 55 P3d 537 (2002), *rev den*, 335 Or 355 (2003).

Considered in their totality, the circumstances in this case were not sufficiently "compelling" to require *Miranda* warnings. There were three officers on the scene, but the statements at issue were made during a one-on-one exchange between defendant and Wilson. The patrol cars arrived and were parked without their sirens sounding or emergency lights flashing. There is no evidence that defendant was physically restrained, frisked, or even touched before or during the period in which he was questioned; he was not confined to a patrol car or put into handcuffs; the officers never drew their weapons. In short, the record is wholly bereft of any evidence that the atmosphere in which defendant was questioned, or the demeanor of the officer who questioned him, was oppressive or coercive. Indeed, as we have already described, the officers conducted themselves in a manner that was fully consistent with a legitimate and routine "stop." Considering the totality of the circumstances, a reasonable person in defendant's situation would not have felt compelled to answer the police officer's questions. The officer's failure to provide defendant with *Miranda* warnings did not offend Article I, section 12, of the Oregon Constitution.

Our conclusion is consistent with earlier cases that have addressed whether a police inquiry incident to a stop took place in compelling circumstances. *Nevel*, in which we considered circumstances with several parallels to those here, provides a particularly helpful example. In that case, an officer arriving at the scene of an auto accident found the defendant in the midst of a domestic dispute with his wife. The wife was still sitting in her car, which had been driven off the road; she claimed that the defendant had forced her off the road with his van. The officer asked the defendant to wait in the back of his patrol car while he spoke to the wife. When he returned to question the defendant, he let him out of the car and noticed that he appeared to be intoxicated. In response to the officer's questions, the defendant admitted to

being in possession of methamphetamine. This court concluded that, although there were six uniformed officers present at the scene and the defendant had been confined for a short period in the back of a patrol car, the circumstances of that stop were not compelling. We noted that the interview by the officer lacked "coercive overtones," that the defendant had not been frisked or handcuffed, and that the officers had not used their sirens or flashers; we concluded that the "investigatory detention * * * was as unobtrusive as possible." *Nevel*, 126 Or App at 276. In this case, the circumstances of defendant's detention were similarly unobtrusive; indeed, there were fewer officers on the scene and defendant was never physically confined.

Defendant relies principally on our decision in *McMillan* to support his claim that compelling circumstances existed in this case. In *McMillan*, the defendant was stopped by police officers after he was witnessed picking up a prostitute. One police officer took the suspected prostitute aside; she admitted that she was a prostitute and that the defendant was going to pay her for sex. With that knowledge, the other officer went to question the defendant. That interview took place while the two stood outside the defendant's truck. When the defendant claimed that he had done nothing wrong, the officer then confronted the defendant with the evidence that he had solicited prostitution, including the admission of the prostitute. Faced with that evidence, the defendant confessed. *McMillan*, 184 Or App at 66. The officer then arrested him and advised him of his *Miranda* rights. The court held that the circumstances were compelling.

Defendant's reliance on *McMillan* is misplaced. In that case, the defendant made his incriminating statements immediately after the officer had confronted him with substantial evidence of his criminal behavior. When a suspect being questioned by a police officer becomes aware that the officer has sufficient evidence to make an arrest, the circumstances become much more compelling from the standpoint of the person being questioned. Thus, the *McMillan* court explicitly noted that this was a central reason why it found the circumstances in that case to be compelling: "Although an officer's unarticulated suspicions do not result in compelling circumstances, expressly confronting a suspect with evidence

of probable cause to arrest may make the circumstances sufficiently compelling to require *Miranda* warnings." *Id.* at 68 (citation omitted). In this case, by contrast, Wilson never said or did anything that would have led defendant to believe that Wilson had probable cause to make an arrest.[2]

■      We turn finally to the issue of defendant's rights under the federal constitution. Under the Fifth Amendment to the United States Constitution, a police officer is not obligated to administer *Miranda* warnings unless the suspect is "subjected to restraints comparable to those associated with a formal arrest." *Berkemer v. McCarty*, 468 US 420, 441, 104 S Ct 3138, 82 L Ed 2d 317 (1984); *see also Stansbury v. California*, 511 US 318, 320, 114 S Ct 1526, 128 L Ed 2d 293 (1994) ("An officer's obligation to administer *Miranda* warnings attaches, however, 'only where there has been such a restriction on a person's freedom as to render him "in custody." ' " (quoting *Oregon v. Mathiason*, 429 US 492, 495, 97 S Ct 711, 50 L Ed 2d 714 (1977))). For the reasons already discussed, defendant was not subject to such restraints.

Reversed and remanded.

---

[2] In addition to *McMillan*, defendant also cites two other cases, *State v. Rose*, 109 Or App 378, 819 P2d 757 (1991), and *Werowinski*, as supporting his claim that compelling circumstances were present here. Both of those cases, however, are distinguishable from this one for the very same reason that *McMillan* is. In *Rose*, as in *McMillan*, the defendant was directly confronted with evidence of probable cause to make an arrest—the police officer had discovered her gun and informed her that it was illegal to be carrying it—before the illegal inquiry took place. Equivalent circumstances were present in *Werowinski*, in which the defendant was confined in the back of a patrol car for 10 to 15 minutes before the officer confronted him with statements by eyewitnesses that implicated him in the crime of assault. Confronted with that evidence, the defendant confessed; only afterwards did the officer deliver the *Miranda* warnings.