Argued and submitted May 30, sentence vacated; remanded for resentencing; otherwise affirmed October 4, 2006

# STATE OF OREGON,
*Respondent,*

*v.*

# DARYL GLEN SAVAGE,
*Appellant.*

04C40562; A124598

144 P3d 1063

David O. Ferry, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega,* Judges.

SCHUMAN, J.

* Ortega, J., *vice* Richardson, S. J.

**SCHUMAN, J.**

Defendant appeals a judgment of conviction for delivery of a controlled substance to a minor, *former* ORS 475.995 (2003), *renumbered as* ORS 475.906 (2005), contending that the trial court erred by denying his motion to suppress incriminating statements that he made to officers before they advised him of his *Miranda* rights. He also assigns several errors to the sentence imposed by the court. We conclude that defendant's motion to suppress was properly denied by the trial court and therefore affirm the conviction, but we remand for resentencing in accordance with *State v. Ramirez*, 205 Or App 113, 133 P3d 343, *adh'd to on recons*, 207 Or App 1, 139 P3d 981 (2006).

The relevant facts are not in dispute. On January 27, 2004, Hedrick, a code enforcement officer with the City of Salem, was patrolling the downtown Salem area on his bicycle when he came upon defendant, a 43-year-old male, and H, a 14-year-old female, under the Marion Street Bridge. As Hedrick approached defendant and H, he smelled marijuana and observed defendant and H passing a pipe between them. When defendant saw Hedrick, he immediately dropped the pipe. Recognizing that enforcement of drug laws was outside the scope of his duty, Hedrick called for support from the Salem Police Department before approaching defendant and H.

As the three were awaiting the arrival of a Salem police officer—an interval of approximately 10 minutes— Hedrick instructed both defendant and H to take a seat on the curb. Hedrick did not use handcuffs, weapons, or any other forcible technique to prevent either defendant or H from leaving the site of the incident. In Hedrick's view, however, neither suspect was free to leave during that period, but he did not tell them that. Hedrick asked whether defendant or H had been smoking marijuana, and they did not respond. At no time did Hedrick advise defendant of his *Miranda* rights.

When Renz, a Salem police officer, arrived on the scene, he spoke with defendant to determine "if we had a

crime at all." Renz inquired about the ownership of the pipe and asked defendant to explain what had occurred before Hedrick's arrival. In response to those inquiries, defendant made the statements that became the focus of his motion to suppress: He admitted smoking marijuana, owning the pipe, and giving H a "hit" off of it. After concluding his interview of defendant, Renz asked H to step aside with him to explain, outside of defendant's presence, her version of events. During Renz's interviews with both defendant and H, which lasted approximately 25 minutes in total, he did not handcuff either of them, nor did he put them into his patrol car or tell them that they were not free to leave.

Defendant was indicted for delivery of a controlled substance to a minor. *Former* ORS 475.995. Before trial, defendant moved to suppress evidence of the statements that he had made to Hedrick and Renz, arguing that he had been effectively placed in custody or was in a comparably compelling situation during the interview process and, as a result, that he should have been advised of his *Miranda* rights before any police questioning. After a hearing, the court denied defendant's motion. A jury trial ensued, and defendant was found guilty of the charge alleged.

At defendant's sentencing hearing, the trial court found that two aggravating factors justified imposition of an upward departure sentence—namely, that H was a particularly vulnerable victim and that defendant was persistently involved in the commission of crimes. Consequently, defendant was sentenced to a term of 60 months in prison as opposed to the 41- to 45-month presumptive sentence under the sentencing guidelines. In addition, the court denied defendant access to leave, release, and various treatment programs, noting that defendant was "beyond treatment."

■ On appeal, defendant first assigns error to the trial court's denial of his motion to suppress the statements that he made to Hedrick and Renz during the course of their interviews. Defendant argues that, by detaining and questioning him, the officers placed him in a compelling circumstance and significantly deprived him of his freedom, thereby obligating them to inform him of his constitutional right to remain

silent guaranteed by Article I, section 12, of the Oregon Constitution[1] and the Fifth Amendment to the United States Constitution.[2] He also argues that the court erred in imposing an upward departure sentence based on the special vulnerability of the victim and defendant's persistent involvement in crime; according to defendant, those findings are not supported by any evidence and, in any event, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the facts used to increase his sentence had to be found by a jury.

■ We first consider defendant's rights under Article I, section 12, of the Oregon Constitution. Under that provision, "The question is whether the officer questioned defendant under conditions that would lead defendant to feel 'compelled' to 'testify against himself,' * * * unless the officer first told defendant of the rights that safeguard him against such compulsion." *State v. Magee*, 304 Or 261, 263, 744 P2d 250 (1987). The inquiry is highly fact-specific, requiring us to "consider the totality of circumstances in which the questioning took place and ask whether a reasonable person in the suspect's position would have felt compelled to answer a police officer's questions." *State v. Bush*, 203 Or App 605, 610, 126 P3d 705 (2006) (citation omitted). Accordingly, "that defendant reasonably may not have believed he could leave does not necessarily mean that he was in full custody or that the circumstances were so compelling as to trigger the *Miranda* requirement." *State v. Nevel*, 126 Or App 270, 276, 868 P2d 1338 (1994). For example, a routine stop by a police officer, followed by a reasonable inquiry, need not be preceded by *Miranda*-like warnings. *Bush*, 203 Or App at 609; *see also Nevel*, 126 Or App at 276.

We take guidance in the present case from our recent opinion in *Bush*, which is, as the state posits, factually and analytically analogous. In *Bush*, three officers responded

---

[1] That provision provides, in part:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

[2] The Fifth Amendment to the United States Constitution provides, in part:

"No person * * * shall be compelled in any criminal case to be a witness against himself[.]"

to a call by a woman complaining of a man who was trespassing in her front yard and would not leave. 203 Or App at 607. On arrival, one officer waited with the defendant in the woman's driveway and asked him what had happened. Suspecting that the defendant was under the influence of alcohol and that he had been driving, the officer—prior to advising the defendant of his *Miranda* rights—asked him several questions that elicited incriminating statements. *Id.* at 608. Because the defendant had not been formally arrested or otherwise placed in restraint by the officer, we held that "the police officers' conduct was fully consistent with a routine and lawful stop"—the defendant had been detained for a reasonable period of time, no force was used by the officers, and the approach of the officers was neither oppressive nor coercive. *Id.* at 609-10. Further, we determined that the circumstances were not so compelling as to merit *Miranda* warnings:

> "There were three officers on the scene, but the statements at issue were made during a one-on-one exchange between defendant and [an officer]. The patrol cars arrived and were parked without their sirens sounding or emergency lights flashing. There is no evidence that defendant was physically restrained, frisked, or even touched before or during the period in which he was questioned; he was not confined to a patrol car or put into handcuffs; the officers never drew their weapons. In short, the record is wholly bereft of any evidence that the atmosphere in which defendant was questioned, or the demeanor of the officer who questioned him, was oppressive or coercive. * * * Considering the totality of the circumstances, a reasonable person in defendant's situation would not have felt compelled to answer the police officer's questions."

*Id.* at 611.

The same analysis applies in the present case. During the interviews conducted by both Hedrick and Renz, defendant was not formally placed under arrest or in any way restrained by the officers. *See State v. Werowinski*, 179 Or App 522, 528-29, 40 P3d 545 (2002) (where the defendant was placed in back of patrol car but was not handcuffed, and no evidence suggested that the level of restraint exceeded the scope of the stop, defendant was not under full custodial

arrest). Nor was defendant placed in compelling circumstances either during his initial wait with Hedrick or during the ensuing interview with Renz. Hedrick initially approached defendant and H on his bicycle, an unintimidating mode of transport that precludes even the option of enabling flashing lights or sirens. Hedrick did not restrain defendant or brandish any weaponry, nor did he frisk or otherwise touch defendant. The circumstances were similarly uncompelling when Renz arrived on the scene. Renz did not activate the lights or siren on his patrol car, he spoke with defendant in a one-on-one manner, he did not apply handcuffs or touch defendant to prevent him from leaving, and he did not place defendant in the patrol car until after the *Miranda* warnings had been given. The entire exchange between the two officers and defendant appears to have been cordial—H testified that the officers were "nice" while conducting their interviews. In light of all the circumstances, we conclude that a reasonable person in defendant's situation would not have felt compelled to answer the officers' questions, thereby rendering unnecessary the recitation of *Miranda* warnings pursuant to Article I, section 12, of the Oregon Constitution.[3]

■    We reach the same conclusion under the Fifth Amendment to the United States Constitution. As we noted in *Bush*, in order for us to hold that a defendant's *Miranda* rights have been violated under the federal constitution, we must determine that the defendant was " 'subjected to restraints comparable to those associated with a formal arrest' " in the absence of a recitation of rights. 203 Or App at 613 (quoting *Berkemer v. McCarty*, 468 US 420, 441, 104 S Ct 3138, 82 L Ed 2d 317 (1984)). We have already explained that no such restraints were present in this case. Accordingly, we hold that, under the present facts, *Miranda* warnings were not required for compliance with either state or federal constitutions, and the statements that defendant made during the police interviews were, therefore, admissible. The trial court properly denied defendant's motion to suppress.

---

[3] We also note that, although Hedrick and Renz both testified that they would not have permitted defendant to leave the scene, neither of them informed him of that fact. This case therefore does not present the question whether or to what extent a suspect who has, in fact, been told he or she may not leave, is for that reason in compelling circumstances.

■ Defendant's remaining four assignments of error challenge his sentence. Defendant first argues that the two aggravating factors cited by the court in imposing an upward durational departure sentence—that H was a vulnerable victim and that defendant was persistently involved in the commission of crimes—were unsupported by the evidence. In addition, defendant advances several unpreserved challenges to the sentence imposed, the first of which contends that, under *Blakely*, the trial court's imposition of an upward departure on the basis of facts that were neither admitted by defendant nor found by a jury offends his rights under the Sixth Amendment to the United States Constitution. Defendant also contends that the court erred by denying him eligibility for temporary leave, work release, and alternative incarceration programs pursuant to ORS 137.750. Although the latter three claims of error were not preserved in the trial court, defendant urges that they be reviewed as plain error on appeal. ORAP 5.45(1).

■ Defendant's constitutional challenge under *Blakely* warrants remand of the case for resentencing. Defendant did not waive his jury trial right, and the facts on which the court based the upward departure sentence were neither admitted by him nor found by a jury. Although defendant did not preserve that claim of error, it is plain on the face of the record, and we exercise our discretion to review it. *State v. Ramirez*, 205 Or App 113, 133 P3d 343, *adh'd to on recons*, 207 Or App 1, 139 P3d 981 (2006). Because defendant must be resentenced due to that error, *see* ORS 138.222(5)(a) (if trial court commits error that requires resentencing, entire case must be remanded), and the other asserted errors might not recur on remand, we do not address them.

Sentence vacated; remanded for resentencing; otherwise affirmed.