Argued and submitted April 30, reversed and remanded September 26, petition for review denied December 5, 2007 (343 Or 554)

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## CHRISTOPHER COTTRELL,
*Defendant-Respondent.*

Multnomah County Circuit Court
030140943; A127903

168 P3d 1200

Joanna L. Jenkins, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Kristin A. Carveth, Deputy Public Defender, argued the cause for respondent. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ROSENBLUM, J.

## ROSENBLUM, J.

The state appeals from an order suppressing evidence after a hearing on defendant's motion to suppress. ORS 138.060(1)(c). The trial court concluded that defendant was stopped without reasonable suspicion when an officer approached the parked vehicle in which defendant was sitting and asked him if he had been drinking. The trial court also concluded that defendant was arrested without probable cause when the officer left defendant with another officer while he interviewed a witness. We disagree and, consequently, reverse and remand.

We recite the facts as presented at the hearing on the motion to suppress. An unidentified caller contacted the police to report a possible drunk driver at a 7-Eleven store. Officer James Nett responded to the 7-Eleven, where he saw the vehicle the caller had described parked in front of the store. Defendant was sitting in the driver's seat with the engine running and the window down. Nett approached and asked defendant if he was okay. Defendant was eating a chili cheese hot dog, and Nett could smell the odor of an alcoholic beverage on defendant's breath over the smell of the chili cheese hot dog. Nett also noticed that defendant's eyes were watery and bloodshot and that defendant seemed unaware that he had spilled melted cheese on himself.

Nett then asked defendant "if he had been drinking." Nett testified that defendant responded that he had had two beers; defendant testified that he denied having had anything to drink.[1] When Nett asked how he had gotten to the 7-Eleven, defendant claimed that his cousin had driven him and then left the area. Nett testified that defendant asked if he could get out of the vehicle and wait for his cousin; defendant testified that Nett asked him to get out of the vehicle and to leave his keys inside.

After defendant was out of the vehicle, Nett's fellow officer, Clary, stayed with defendant while Nett went inside to speak to the store clerk. The clerk told Nett that he had

---

[1] At the hearing on his motion to suppress, defendant admitted under cross-examination that he had consumed a "couple" of "[p]ounder[ ]" beers.

watched defendant get out of the driver's side door and enter the 7-Eleven, where he stumbled as he walked around. The clerk also told Nett that he could smell the odor of alcohol on defendant's breath when he paid for the chili cheese dogs and that he would not have sold defendant any alcohol had he tried to purchase it. While Nett was inside gathering this information, defendant stood "shoulder to shoulder" on the pavement near the car with Clary and asked whether the cowboy boots defendant was wearing might affect his ability to "walk a straight line."

Based on his own observations and the clerk's statements, when Nett left the 7-Eleven, he asked defendant to perform a field sobriety test. Defendant initially expressed confusion at having to perform the test. When Nett explained that there had been a complaint about his driving, defendant refused to perform the test. Nett then read him the field sobriety test warning explaining that the test was purely physical, and defendant agreed to be tested. Following the administration of the tests, Nett cited defendant for driving under the influence of intoxicants in violation of ORS 813.010 (2005), *amended by* Or Laws 2007, ch 879, § 3.

Defendant filed a motion to suppress evidence obtained pursuant to Nett's interactions with defendant. After a hearing on the motion, the trial court concluded that Nett had stopped defendant in violation of Article I, section 9, of the Oregon Constitution when he approached the vehicle in which defendant was sitting.

The state sought reconsideration, which the trial court granted. After hearing further evidence and reviewing additional authority, the trial court acknowledged that Nett's merely approaching defendant's vehicle did not constitute a stop, but concluded that Nett lacked reasonable suspicion when he asked defendant whether he had been drinking and that asking that question effected a stop. Although the trial court did not resolve the exact circumstances of defendant's exit from the vehicle,[2] it concluded that Nett arrested defendant when he left defendant with Clary outside the store.

---

[2] The trial court declined to make this finding because "the stop had already occurred at that point."

According to the trial court, at that point, Nett "really had no evidence whatsoever to establish * * * objective probable cause for the arrest." On appeal, the state argues that the trial court erred by concluding that Nett stopped defendant when he asked him whether he had been drinking and further by concluding that defendant had been arrested when he was left with Cleary.

■■ Under Oregon law, there are three general levels of encounters between police and citizens: a police-citizen encounter without any restraint of liberty ("mere conversation"); an encounter in which the officer temporarily restrains a person's liberty (a "stop"); and an encounter in which the officer either places a person under actual or constructive restraint or takes a person into custody for the purpose of charging that person with an offense (an "arrest"). *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991); *see also* ORS 133.005(1) (defining "arrest"); ORS 131.605(6) (defining "stop"). Although an officer needs no justification for engaging in mere conversation with a citizen, he must have a reasonable suspicion of criminal activity for a stop and probable cause to believe that the person committed a crime for an arrest.

■ We first consider whether Nett asking defendant whether he had had anything to drink was constitutionally permissible. The trial court concluded that, by asking that question, Nett stopped defendant. We need not decide whether the question constituted mere conversation or a stop, because, in all events, we conclude that a stop would have been justified at that point by reasonable suspicion. First, Nett's observation of defendant's bloodshot, watery eyes, defendant's inattentive and messy eating, and the odor of alcohol on defendant's breath were objective facts that permitted Nett to reasonably suspect that defendant was under the influence of intoxicants. *See, e.g.*, *State v. Berg*, 140 Or App 388, 391, 914 P2d 1110 (1996) (bloodshot eyes and odor of alcohol on a driver's breath created reasonable suspicion); *State v. Liebrecht*, 120 Or App 617, 618, 853 P2d 1322, *rev den*, 317 Or 584 (1993) (odor of alcohol emanating from the vehicle and a driver's admission that he had been drinking created reasonable suspicion); *State v. Kolendar*, 100 Or App 319, 322-23, 323 n 1, 786 P2d 199, *rev den*, 309 Or 698 (1990)

("The odor of alcohol on a person's breath is an objective, observable fact that permits an officer reasonably to suspect intoxication.").[3] Second, Nett had reason to suspect that defendant had been driving. When Nett arrived at the 7-Eleven, he found defendant sitting in the driver's seat of a vehicle with the engine running. Those are "specific and articulable facts [that] give rise to the inference" that defendant had been driving. *State v. Valdez*, 277 Or 621, 626, 561 P2d 1006 (1977) (quotation marks and citation omitted). We conclude that, when Nett asked defendant whether he had been drinking, Nett reasonably suspected that defendant had been engaged in the criminal activity of driving under the influence of intoxicants.[4] That reasonable suspicion would

---

[3] Defendant argues that the record is not clear as to whether Nett smelled the odor of alcohol before he asked defendant about drinking and that, because the trial court concluded that Nett lacked reasonable suspicion, we must presume that Nett smelled alcohol only after he asked the question. However, before we will presume a fact not specifically found by the trial court there must be evidence in the record to support it. Here, there is not. During his direct examination, Nett described the sequence of events leading up to his asking defendant that question.

"A. The window was all the way down. And [defendant] appeared to be eating the remains of some sort of 7-Eleven cheese hot dog * * *. There was melted cheese on [defendant's] right chest and shoulder area.

"I asked [defendant] if he was okay. I noticed that the vehicle was running, and he was sitting in the driver's seat. I noticed that his eyes were watery and bloodshot. And I could smell the odor of an alcoholic beverage on [his] breath over the smell of the hot dog that he had just finished eating.

"Q. Okay. And what did he respond when you asked him that?

"A. Oh, I asked him if he had been drinking. He stated that he had two beers."

Defendant similarly testified:

"Q. [When you were about halfway done with the second hot dog,] what happened?

"A. I noticed [Nett] was at the window and said how are you doing tonight. I said fine and went back to eating, taking another bite of my hot dog. He said had you had anything to drink. I told him no."

The only reasonable inference based on that evidence is that Nett detected the odor of alcohol on defendant's breath during his initial exchange with defendant, *before* he asked defendant if he had been drinking. We find no evidence in the record to support the inference that Nett detected the odor of alcohol only *after* asking the question.

[4] The trial court declined to "rely at all on the informant's information [of a possible drunk driver] because the state is unable to produce any of the evidence that is required for us to be considering the informant's call as a basis for the reasonable suspicion necessary for the officer to conduct stop." The state does not challenge that ruling on appeal, and we therefore do not consider the informant's information when analyzing whether Nett had reasonable suspicion. Nevertheless, we note that, under certain circumstances, an anonymous tip can support and even create

have permitted Nett to stop defendant without violating Article I, section 9.

■■ We next consider whether defendant was "arrested" when Nett left him with Clary while Nett entered the 7-Eleven to talk to the clerk. The trial court so concluded based on Nett's testimony that defendant was not free to go at that time, and on defendant's testimony that he believed that he was not free to go (even though he testified that he had no intention of going anywhere because he was waiting for his cousin to return). Although the record supports those findings, "[t]he fact that an individual who is subject to a stop is not free to go does not transform a stop into an arrest." *State v. Bush*, 203 Or App 605, 609, 126 P3d 705 (2006) (citing ORS 131.605(6)'s definition of a stop as a "temporary restraint of a person's liberty").

Moreover, Nett's conduct in leaving defendant with another officer to further investigate whether a crime has occurred is fully consistent with a routine and lawful stop. There is no evidence in the record that defendant was detained for an unreasonable amount of time, that the officers used unreasonable force, or that the officers' conduct or attitudes were in any way oppressive or coercive. *Id.* Nett did not use any restraints or confine defendant in the back of his patrol car; he simply left defendant to stand "shoulder to shoulder" on the pavement near the car with Clary. *Id.* Defendant was comfortable enough with Clary to ask him whether the cowboy boots defendant was wearing would affect the field sobriety test. In sum, defendant was subject only to a "temporary restraint on [his] liberty" supported by Nett's reasonable suspicion that defendant had been driving while under the influence of intoxicants. ORS 131.605(6). He was not subject to "actual or constructive restraint" or "[taken] into custody for the purpose of charging [him] with an offense."[5] ORS 133.005(1). The trial court erred in concluding otherwise.

reasonable suspicion. *See, e.g.*, *State v. Cook*, 163 Or App 24, 31, 986 P2d 1228 (1999), *rev'd on other grounds*, 332 Or 601, 34 P3d 156 (2001) (an anonymous tip, when coupled with defendant's conduct at and proximity to the scene, created reasonable suspicion); *State v. Kosta*, 75 Or App 713, 718, 708 P2d 365 (1985), *aff'd*, 304 Or 549, 748 P2d 72 (1987) (anonymous telephone calls contained sufficient information to provide the police with reasonable suspicion).

[5] Because we conclude that Nett had reasonable suspicion—all that was required to stop defendant—we do not address whether Nett also had probable cause.

Defendant also contends that Nett's conduct ran afoul of the Fourth Amendment to the United States Constitution because he stopped defendant without reasonable suspicion of criminal conduct. We reject defendant's federal constitutional arguments for the same reasons we reject his Oregon constitutional arguments.

Reversed and remanded.