Submitted October 29, convictions for first-degree kidnapping in Case No. C901051CR reversed and remanded with instructions to enter a judgment of conviction for one count of first-degree kidnapping reflecting that defendant was convicted on four theories; convictions for first-degree kidnapping in Case No. C901054CR reversed and remanded with instructions to enter a judgment of conviction for one count of first-degree kidnapping reflecting that defendant was convicted on four theories; remanded for resentencing; otherwise affirmed November 24, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## VANCE JAY ROBERTS,
*Defendant-Appellant.*

Washington County Circuit Court
C901051CR, C901054CR;
A136881 (Control), A136882

243 P3d 155

Peter Gartlan, Chief Defender, and Joshua B. Crowther, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant. Vance Roberts filed the supplemental brief *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Matthew J. Lysne, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant, who was convicted following a jury trial of multiple counts of first-degree kidnapping, ORS 163.235(1), and various sexual offenses against each of the two victims, appeals.[1] He assigns error to (1) the trial court's denial of his motion to suppress various inculpatory statements that he made during police interrogation and (2) the trial court's failure to merge the convictions on the multiple counts of first-degree kidnapping (which were predicated on separate theories) in each case into a single conviction. For the reasons that follow, we reject defendant's first assignment of error, but address and remedy, as "plain error," the court's failure to merge the multiple kidnapping convictions in each case. Accordingly, we reverse and remand for resentencing but otherwise affirm.[2]

In his first assignment of error, defendant contends that inculpatory statements that he made during police interrogation were unlawfully elicited because he had previously, earlier on the same day, unambiguously invoked his right to counsel,[3] and police officers later reinitiated questioning without an attorney present. The state offers a variety of alternative responses, including asserting that the prior invocation of the right to counsel was not preclusive of the subsequent interrogation because, at the time of the antecedent invocation, defendant was neither in custody nor in compelling circumstances. We agree with the state in that regard and, consequently, do not address its alternative contentions.[4]

---

[1] The cases pertaining, respectively, to the victims M. D. (Case No. C901051CR) and A. H. (Case No. C901054CR) were consolidated for trial and have been consolidated for our consideration.

[2] We reject without published discussion the 14 supplemental assignments of error raised in defendant's *pro se* supplemental appellant's brief.

[3] That right is derivative of a person's rights against compelled self-incrimination under Article I, section 12, of the Oregon Constitution ("No person shall be * * * compelled in any criminal prosecution to testify against himself.") and the Fifth Amendment to the United States Constitution ("No person * * * shall be compelled in any criminal case to be a witness against himself[.]"). *See, e.g., State v. Charboneau*, 323 Or 38, 53, 913 P2d 308 (1996); *Maryland v. Shatzer*, 559 US _____, 130 S Ct 1213, 175 L Ed 2d 1045 (2010).

[4] The state collaterally disputes, for example, whether defendant adequately raised and preserved in the trial court any contention predicated on purported

The inculpatory statements that defendant sought to suppress were elicited during an interrogation beginning shortly after 8:00 p.m. on the evening of June 3, 1990. As pertinent here, defendant had four prior encounters with the police that day. The invocation of the right to counsel occurred during the second of those encounters.

The first encounter occurred at about 1:30 p.m. on the afternoon of June 3. A Hillsboro police officer, Rademacher, who had been waiting in a patrol car outside of defendant's home based on reports of defendant's criminal activities, saw defendant and another individual, Jackson, arrive in a car and go into a neighbor's house. When defendant and Jackson emerged, Rademacher told them to stop and put their hands in the air; a second officer, Gulosh, who had arrived and who had been briefed on a report that defendant and Jackson carried weapons, told them that "they were not under arrest" but that he needed to handcuff and frisk them for officer safety purposes. After defendant was frisked, and the officers seized a can of chemical mace, Gulosh removed the handcuffs and, reiterating that defendant was not under arrest, told defendant that he was free to go. The frisk, with defendant handcuffed, took three to four minutes. Thereafter, during the balance of the initial encounter, Gulosh told defendant that police were investigating an "incident" at his residence, and defendant offered an innocuous explanation. Gulosh again told defendant and Jackson that they were free to go, and they returned to the neighbor's house.

The second encounter began about 20 minutes later, at about 2:00 p.m. At that time, defendant had again left the neighbor's house and was standing in the front yard. Gulosh, who had in the interim received additional information from other law enforcement personnel, approached defendant, read him *Miranda* warnings, and told him that "he was not

---

"compelling circumstances." We need not resolve whether defendant's other arguments in support of suppression sufficiently, albeit derivatively, implicated the "compelling circumstances" construct because of our determination, explained below, that, in all events, the circumstances of the operative encounter were not "compelling." *See* 239 Or App at 42-43.

under arrest" and that he "did not have to talk to me." Defendant indicated that he understood his rights and was willing to speak with Gulosh. Gulosh and defendant then walked into a backyard area, and defendant responded to Gulosh's inquiries until Gulosh asked defendant about sexual contact with the alleged victim. At that point, defendant stated, "I don't want to answer that, and I want to talk to an attorney." Gulosh confirmed that defendant did not want to talk further and ended the conversation, which had lasted between 10 and 15 minutes. Defendant then went back into his neighbor's house.

The third encounter occurred at 4:55 p.m., when defendant left the neighbor's house and asked Gulosh whether he could leave. When Gulosh confirmed that he could, defendant and Jackson drove away in the neighbor's vehicle.[5]

The fourth encounter occurred at 6:50 p.m., when another Hillsboro officer, Erickson, arrested defendant and Jackson in a restaurant. Erickson informed defendant of his *Miranda* rights and did not question defendant. Defendant did not ask for an attorney.

Finally, at about 8:10 p.m., Erickson and another officer again read defendant his *Miranda* rights while he was being held at the Hillsboro Police Station, and defendant confirmed that he understood those rights. Defendant told Erickson that he would talk with him and then executed a written waiver of rights. During the ensuing recorded interview, defendant made inculpatory statements.

■■ As noted, the state contends—and we agree—that the circumstances just recounted do not compel suppression of defendant's statements during the evening interview. The governing constitutional principle for our purposes is that, if a criminal suspect unambiguously invokes the right to counsel *while in custody—i.e.*, "during custodial interrogation," *Edwards v. Arizona*, 451 US 477, 484-85, 101 S Ct 1880, 68

---

[5] Defendant's vehicle was an object of the search warrant.

L Ed 2d 378 (1981)—police cannot subject the suspect to "further interrogation * * * until counsel has been made available to him [or her], unless the accused himself [or herself] initiates further communication, exchanges, or conversations with the police." *Id.*[6] *See also State v. Kell*, 303 Or 89, 734 P2d 334 (1987) (adopting *Edwards* formulation for purposes of Article I, sections 11 and 12, of the Oregon Constitution).

Here, the essential prerequisite of that principle was not satisfied. Defendant was not in custody during the 2:00 p.m. encounter when he invoked his right to an attorney. Rather, he was physically unrestrained[7] and in familiar surroundings (literally, his own backyard); he was told that he was not under arrest, and he was free to leave.

■     Further, and for the same reasons, the circumstances of the 2:00 p.m. encounter were not so "compelling" as to trigger constitutional protections under the Oregon Constitution commensurate with those afforded under *Kell*. *See State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006) ("[I]n determining whether the police placed a defendant in compelling circumstances, this court will consider all the circumstances, and its overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract."). Specifically, the 2:00 p.m. encounter bore none of the classic hallmarks of "compelling circumstances": As noted, the surroundings were familiar to defendant; the duration of the interaction was relatively brief; the ambience was low-key—that is, no overt (or even discernible) "pressure [was] exerted on the defendant"; and defendant remained free throughout to terminate the encounter. *Id.* at 640-41. In short, nothing in the 2:00 p.m. encounter smacked of coercion or "[f]orced

---

[6] In *Shatzer*, the Court refined, or amplified, *Edwards* to hold that, when a suspect has been out of custody for 14 days or more following the invocation of the right to counsel while in custody, the police can unilaterally reinitiate interrogation. 559 US at _____, 130 S Ct at 1223.

[7] Defendant refers to having been handcuffed as evidence of either having been held in custody or under compelling circumstances. However, that restraint—which defendant was explicitly informed pertained to officer safety concerns—occurred during the earlier, completed 1:30 p.m. encounter, after which defendant did, in fact, leave.

detention." *Id.* at 641. The trial court did not err in denying the motion to suppress.

■     Defendant's second assignment of error raises unpreserved challenges to the trial court's failure to (a) merge defendant's four convictions on four counts of first-degree kidnapping as to the victim M .D. (Counts 1, 2, 3, and 4 in Case No. C901051CR) into a single conviction on Count 1; and (b) merge defendant's convictions on four counts of first-degree kidnapping as to the victim A. H. (Counts 1, 2, 3, and 4 in Case No. C901054CR) into a single conviction on Count 1. The state acknowledges that, because the four counts in each case pertain to different theories based on a single incident of kidnapping, which involved a single victim, the trial court erred in that regard. We accept the state's concession as well founded, *see, e.g., State v. Hylton,* 210 Or App 104, 150 P3d 47 (2006), *rev den,* 342 Or 473 (2007), and review the matter as "error of law apparent on the face of the record." ORAP 5.45(1). Further, for the reasons expressed in *State v. Valladares-Juarez,* 219 Or App 561, 564-65, 184 P3d 1131 (2008), we exercise our discretion under *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 382 n 6, 823 P2d 956 (1991), to correct that error.

Convictions for first-degree kidnapping in Case No. C901051CR reversed and remanded with instructions to enter a judgment of conviction for one count of first-degree kidnapping reflecting that defendant was convicted on four theories; convictions for first-degree kidnapping in Case No. C901054CR reversed and remanded with instructions to enter a judgment of conviction for one count of first-degree kidnapping reflecting that defendant was convicted on four theories; remanded for resentencing; otherwise affirmed.