Submitted May 28, 2010, affirmed April 20, petition for review denied
July 28, 2011 (350 Or 571)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## SCOTT W. NIEMAN,
*Defendant-Appellant.*

Josephine County Circuit Court
06CR0094; A139607

256 P3d 126

Peter Gartlan, Chief Defender, and Brandon G. Williams, Appellate Division, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Erin C. Lagesen, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals from a judgment of conviction for one count of unlawful possession of methamphetamine, a Schedule II controlled substance, ORS 475.894, assigning error to the trial court's denial of his motion to suppress. Defendant argues that the investigating officer placed him in compelling circumstances that required *Miranda* warnings,[1] and that the investigating officer continued to question him despite his unequivocal request for an attorney. Further, defendant contends that even if his request for an attorney could be characterized as equivocal, the investigating officer failed to limit his follow-up questions to clarifying defendant's intent. We conclude that the officer's interview of defendant did not occur in the context of compelling circumstances; therefore, the officer was not required to limit his questions once defendant mentioned the prospect of contacting an attorney. Accordingly, we affirm.

We state the following facts consistently with the trial court's factual findings and its decision to deny defendant's motion to suppress. *State v. Shaff*, 343 Or 639, 641, 175 P3d 454 (2007). Officer Lidey noticed a white pick-up truck with a single occupant parked in front of a restaurant. The occupant was "kind of bent over a little bit" in his seat. Lidey drove away, but returned after a few minutes and parked his patrol car in a parking spot approximately 50 feet behind the truck. Lidey got out of the car and approached the truck, where he again noticed a lone silhouette inside. He observed defendant seated in the driver's seat using a small flashlight to view some papers, and noted that the steering column appeared to be broken.

Lidey greeted defendant and asked him what he was doing there, and defendant indicated that he had just come from the restaurant. Lidey noticed that defendant was nervous and that there was a "large pile of keys" on the front

---

[1] Article I, section 12, of the Oregon Constitution is an independent source for warnings similar to those required under the Fifth Amendment to the United States Constitution, as described in *Miranda v. Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). For ease of reference, we refer to those warnings as *Miranda* warnings.

passenger seat. Lidey asked defendant if he had any identification, and defendant started searching, indicating that he knew he was supposed to carry identification when he drove. In response to further questions from Lidey, defendant indicated that he had driven the truck to its current location. Lidey emphasized the importance of carrying and presenting identification and noted that one could be arrested for not doing so, and defendant acknowledged that he was aware of the possible consequences of driving without a license. Lidey then asked defendant if he could search him for identification, and defendant refused consent.

Lidey asked defendant if he would mind stepping out of the truck to continue their conversation. Defendant agreed and got out, but appeared to become more nervous and asked why he had been stopped. Lidey responded, "I have not stopped you." He explained that they "were just having a conversation here and that [defendant] was free to go." Lidey pointed out to defendant that his patrol car was parked some distance away, that he had not activated his lights, and noted, "I'm not running you on the radio or anything like that." Lidey explained to defendant that he routinely patrolled the area, which was known for frequent illegal drug activity, and that when he observed someone acting suspiciously, he would contact them to see what they were doing. Lidey explained some of the suspicious activity that he had observed from defendant and noted the late hour. Defendant acknowledged that he could understand Lidey's suspicions, but explained that he had done nothing wrong.

At that point, another officer arrived, and Lidey again asked defendant if he could search him for identification. Defendant refused, but indicated that his identification might be inside the truck and stated, "Maybe I should have an attorney present." Lidey immediately retrieved his recorder and began taping the encounter. He started by recounting on the recording what had occurred up to that point, with defendant occasionally interjecting comments. Then defendant indicated that he wanted to retrieve his identification from the truck, but Lidey asked him not to for officer safety reasons. Lidey informed defendant that he was not under arrest, but nevertheless gave him *Miranda* warnings.

After defendant indicated that he understood his rights, Lidey again asked him whether he had identification, and defendant said that he thought it might be inside his truck. Lidey told defendant that he could look for it if he allowed Lidey to pat him down for weapons first. Defendant agreed and Lidey patted him down, finding nothing. Defendant retrieved his Oregon driver's license from the truck, which Lidey examined and returned to him. Lidey then asked defendant for consent to search the truck for anything illegal. Defendant granted consent, but Lidey did not find anything illegal. Lidey then asked defendant if he could search his person for anything illegal, and defendant responded, "I'd rather you didn't."

Lidey then asked if he could look at defendant's eyes, and defendant agreed. Lidey observed that defendant's pupils

> "appeared to be medium and fixed and that they did not respond to the umbra of my flashlight or the outer edge of my flashlight as it ran across his eyes. Based on my training and experience that's an indicator which is often associated—a physical indicator which is often associated with recent stimulant use."

Lidey informed defendant that, based on his observations, he suspected that defendant had recently used stimulants and that, based on the totality of the circumstances, he suspected that defendant "might have something illegal on [his] person." He told defendant that, if defendant gave him the illegal substance, he would give him a citation to appear rather than arresting him, encouraging defendant to "draw a line in the sand * * * and stop using drugs, if that is in fact what you're doing, which I suspect that you are."

Defendant then produced a used syringe from his left sock. Initially defendant denied that the syringe was his, but ultimately he admitted that it belonged to him and that he had used drugs that morning. At that point, Lidey informed defendant that he was detained. After some additional back and forth, defendant produced a small bag containing a crystalline substance, and indicated that it was

$20 worth of methamphetamine. Lidey transported defendant to the police station to issue him a citation to appear for the crime for which he was ultimately convicted.

Before trial, defendant, citing the Fifth Amendment to the United States Constitution and Article I, section 12, of the Oregon Constitution, moved to suppress all statements that he made after Lidey gave him *Miranda* warnings—all of which were captured on the recording—and all evidence that resulted from the search "based upon statements made by defendant after his rights under *Miranda* were disregarded." Defendant contended that his interaction with Lidey triggered defendant's right to counsel and the necessity for the warnings, and that he invoked his right to counsel when he stated, "Maybe I should have an attorney present."

After a hearing, at which the recording made by Lidey during the encounter with defendant was played, the trial court denied defendant's motion. The court explained that the evidence showed that the encounter between Lidey and defendant was casual and that defendant was free to leave up until the time he produced the syringe and bag of methamphetamine. The court noted that the patrol car was parked 50 feet away with its lights off and no siren activated, that Lidey had not drawn his gun or handcuffed defendant, and that Lidey specifically told defendant that he was free to leave and was not stopped or arrested. The court also pointed out that defendant felt comfortable enough to deny Lidey's request for consent to search on three different occasions during the encounter, while consenting to some of his other requests. The court concluded that after Lidey gave defendant *Miranda* warnings, defendant continued to cooperate with the investigation and waived "any possible equivocal request for counsel[.]"

██ Defendant entered a conditional guilty plea on a single count of possession of a Schedule II controlled substance, and the trial court entered judgment. We review the trial court's denial of a motion to suppress for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the trial court's historical findings of fact if there is evidence in the record to support them. *Shaff*, 343 Or at 648.

██ On appeal, defendant raises only the state constitutional issue. Article I, section 12, of the Oregon Constitution

provides, in part, that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." To protect a person's right against compelled self-incrimination, *Miranda* warnings must be given before questioning when a person is in "full custody" or in "circumstances that create a setting which judges would and officers should recognize to be compelling." *Shaff*, 343 Or at 645 (internal quotation marks omitted). When a suspect unequivocally asserts the right to counsel while in custody or compelling circumstances, the questioning must immediately cease. *State v. Montez*, 309 Or 564, 572, 789 P2d 1352 (1990). If the assertion of the right to counsel is equivocal, the officer's follow-up questions must be limited to determining whether and to what extent defendant intended to invoke his right to counsel. *State v. Charboneau*, 323 Or 38, 54, 913 P2d 308 (1996).

■■ Generally, where a defendant is not in custody or compelling circumstances, the protections of Article I, section 12 do not apply. *But see State v. Davis*, 234 Or App 106, 227 P3d 204, *rev allowed*, 349 Or 56 (2010) (concluding that when a person not in compelling circumstances unequivocally invoked the right to remain silent under Article I, section 12, as to an ongoing investigation, the officer must "respect that assertion of the right to remain silent if the police officer is personally aware of that invocation"). Accordingly, when a defendant talks to police of his own free will—that is, while not in custody or compelling circumstances—police need not cease questioning the defendant if he mentions the prospect of having an attorney present. *State v. Terry*, 333 Or 163, 172-73, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002); *State v. Roberts*, 239 Or App 37, 41-43, 243 P3d 155 (2010) (concluding that when the defendant asserted his right to counsel during the second of four encounters with police, he was not in custody or compelling circumstances and the trial court properly denied his motion to suppress subsequent inculpatory statements).

Defendant asserts that his interaction with Lidey placed him in compelling circumstances so that, when defendant stated, "[m]aybe I should have an attorney present[,]" he unequivocally asserted his right to counsel, at which point Lidey was required to stop all questioning. Alternatively, defendant argues that even if his statement was equivocal, Lidey should have sought clarification from defendant rather

than continuing his investigatory line of questioning. According to defendant, Lidey's failure to do so exceeded the permissible scope of further inquiry. Finally, defendant contends that once he invoked his right to counsel, he did not thereafter waive that right by continuing to cooperate with Lidey's investigation.

■■■■ Whether defendant was in compelling circumstances turns on "how a reasonable person in [his] position would have understood his * * * situation." *Shaff*, 343 Or at 645. That inquiry requires us to consider the totality of the circumstances, and the "overarching inquiry is whether the officers created the sort of police-dominated atmosphere that *Miranda* warnings were intended to counteract." *State v. Roble-Baker*, 340 Or 631, 641, 136 P3d 22 (2006). The nonexclusive factors we consider to make that determination include (1) the location of the encounter, (2) the length of the encounter, (3) the amount of pressure exerted on the defendant, and (4) the defendant's ability to terminate the encounter. *Id.* at 640-41. We also have looked at the number of officers and police cars at the scene, the demeanor of the investigating officer, and the use of physical force or confinement during questioning. *State v. Schwerbel*, 233 Or App 391, 395, 226 P3d 100, *rev den*, 349 Or 172 (2010) (citations omitted). As a general matter, "[o]fficer questioning during an 'investigatory detention' or routine traffic stop ordinarily does not create compelling circumstances that would require *Miranda* warnings." *Id.*

Defendant asserts that Lidey approached him late at night, asked what he was doing there, and requested identification—"thus giving rise to an investigatory atmosphere from the advent of the exchange with defendant." Defendant places particular significance on Lidey's comment to defendant that a person can be arrested for failing to carry his license while operating a car, which he asserts would have caused a reasonable person to believe that he was the subject of an investigation and possibly subject to arrest. Further, defendant maintains that, given Lidey's follow-up request to search defendant for identification, no reasonable person would have felt free to terminate the encounter at the point. Defendant discounts Lidey's statement to defendant that he was "free to go," because, according to defendant, the

officer "had clearly dominated the situation," and because the officer made follow-up comments about the area being known for illegal activity. Defendant also points to the arrival of a second officer, to Lidey's request that defendant get out of his car, and his further request to search defendant as indicative of compelling circumstances.

Considering the totality of the circumstances, we conclude that, at the time defendant made his statement that "[m]aybe [he] should have an attorney present," the circumstances were not compelling. The encounter was relatively brief and occurred on a public street, and Lidey specifically informed defendant that he was not under arrest. *See State v. Prickett*, 324 Or 489, 495-96, 930 P2d 221 (1997) (concluding that circumstances were not compelling when the stop occurred on a public highway and the defendant was not coerced or threatened in any way). Defendant was not placed in any kind of restraint. *See State v. Bush*, 203 Or App 605, 611, 126 P3d 705 (2006) (determining that lack of evidence of physical restraint of the defendant supports the conclusion that the circumstances were not compelling). There were only two officers present, and the second officer did not play a significant role in the investigation. *See id.* (noting that while three officers were present, the incriminating statements were made during a one-on-one exchange between the defendant and an officer). Lidey parked his car approximately 50 feet away and did not activate his lights or sirens. *See State v. Nevel*, 126 Or App 270, 276-77, 868 P2d 1338 (1994) (deciding that circumstances were not compelling where, although there were three police cars present, "none had on flashing lights, a siren or a spotlight"). Moreover, according to the trial court, the tone of the encounter was "casual" and

> "the conversation between Lidey and [d]efendant [was] extremely cordial and Lidey [was] very professional and courteous to [d]efendant throughout the recording. Lidey repeatedly told [d]efendant how much he appreciated [d]efendant's cooperation. Additionally, there were some light-hearted exchanges between [d]efendant and the officers and * * * Lidey even casually spoke to a passerby during the course of his casual conversation with [d]efendant."

We recognize that police action can undercut statements that the defendant is "free to go" or "not under arrest."

*Roble-Baker*, 340 Or at 642 (finding compelling circumstances where the police told the defendant that she was free to leave, but then created a situation where, "for all practical purposes," the defendant was required to remain at police headquarters). However, Lidey's actions in this instance do not rise to that level; under the circumstances, defendant did remain free to leave. Further, defendant attaches more significance than is warranted to Lidey's "indirect threat" to arrest defendant for failure to produce his license. In *Schwerbel*, we concluded that the surrounding circumstances became compelling when the officer told the defendant that he was going to be detained because it was a crime for the defendant to drive with a suspended license. 233 Or App at 396-97. However, that case involved an unambiguous statement that defendant was not free to leave. Here, by contrast, while Lidey initially indicated that a person could be arrested for failure to carry a license, he then specifically informed defendant that he was not being stopped and was free to go.

In sum, given the totality of the circumstances at the time that defendant stated that "[m]aybe [he] should have an attorney present," he was not in compelling circumstances. Accordingly, his invocation of his right to counsel did not require police to either stop questioning him or limit their questions to clarification of his intentions regarding asserting his right to counsel, and did not operate to render his continued voluntary participation in a police interview involuntary. *See Terry*, 333 Or at 172.

Affirmed.